609 A.2d 1360

**RICHARD T. BYRNES CO., INC., Appellee,**

v.

**BUSS AUTOMATION, INC., Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 29, 1992.

Filed May 26, 1992.

550

Mark L. Tunnell, West Chester, for appellant.

C. Douglas Parvin, West Chester, for appellee.

Before CIRILLO, DEL SOLE and KELLY, JJ.

DEL SOLE, Judge:

Appellant appeals from a money judgment in favor of the Appellee. Upon consideration of Appellee's Motion for Summary Judgment, the trial court granted the motion and awarded the Appellee a judgment in the amount of $42,984.53 plus interest of $9,703.74. The Appellant bases its appeal on its belief that the court was not capable of

exercising jurisdiction over the Appellant and that the court erred in granting Summary Judgment to the Appellee where issues of material fact remained.

## FACTS

The Appellant, Buss Automation, Inc. (hereinafter sometimes referred to as, "New Buss") is a North Carolina corporation. The following is a description of New Buss' formation. On August 7, 1986, Buss Automation, Inc. (hereinafter referred to as, "Old Buss"), a North Carolina corporation, Milton Machine Co., Inc., a North Carolina corporation ("Milton"), Betty L. Buss ("Betty Buss"), Betty C. Buss, Executrix of the Estate of Jack M. Buss, Deceased ("Executrix"), and Damsmith Corporation, a Delaware corporation, ("Damsmith") and a group of Damsmith's subsidiaries (the "Damsmith Group") entered into an agreement of sale whereby Betty Buss individually and as Executrix, as sole shareholder in both Old Buss and Milton, agreed to sell Old Buss and Milton and certain of the assets of the two corporations to Damsmith and the Damsmith Group. Damsmith subsequently acquired the remaining assets and liabilities in a settlement which occurred on or about September 9, 1986. Pursuant to that agreement, Old Buss agreed to relinquish use of its name. On or about September 7, 1986, Old Buss changed its name to Jabet, Inc. and at some point, Milton changed its name to Luma Corporation, Inc., ("Luma"). On September 24, 1986, New Buss was incorporated in North Carolina under the name of Buss Automation, Inc. New Buss maintained the same address that Old Buss had used and it, like Old Buss, continued to manufacture lumber handling systems. The Board of Directors of Old Buss had consisted solely of Betty Buss. She was also the sole shareholder. The record indicates that Betty Buss did not have any interest in New Buss.

The Appellee, Richard T. Byrnes Co., Inc. ("Byrnes"), is a Pennsylvania corporation. On March 3, 1986, in response to Byrnes' request on behalf of one of its clients, Old Buss' sales manager wrote to Byrnes for the purposes of provid-

ing it with information about Old Buss' products. In the letter, the sales manager provided Byrnes with a price quote for certain machinery, including a five percent (5%) commission for Byrnes, in the sales price. In addition, Old Buss' sales manager requested that Byrnes provide him with the name of its customer as soon as possible.

Byrnes responded to the sales manager's request on March 13, 1986 and stated that its customer was Taney Supply & Lumber Corporation ("Taney") a company located in Maryland. In addition, Old Buss was given the name, address and phone number of Taney's consultant ("Taney's Consultant").

On April 11, 1986, another individual from Old Buss wrote to Taney's Consultant. The letter was copied to Byrnes and contained a price quote. In the letter, its author expressly stated that the price quote included Byrnes' commission.

On July 9, 1986, Old Buss forwarded a formal proposal to Taney's Consultant and suggested that the parties meet to discuss the transaction. The letter contained a postscript which stated that the quoted prices contained in the proposal included Byrnes' commission.

## PROCEDURAL HISTORY

Byrnes filed its complaint against New Buss on May 15, 1989. The complaint alleged that New Buss had sold goods to Taney and that it had failed to forward the agreed upon commission to Byrnes. It set forth claims of breach of contract and unjust enrichment. In its complaint, Byrnes asserted that Old Buss' letter to Byrnes dated March 3, 1986 constituted a contract. According to the copies of the invoices which were attached as exhibits to Byrnes' complaint, New Buss began shipping items to Taney in January, 1987 and continued shipping items to Taney until May, 1987. Byrnes averred that, at the time of the filing of its complaint, it was its belief that New Buss had shipped goods totaling $1,000,020.00 to Taney (that figure was later re-

duced to $859,690.62). In addition, Byrnes asserted that, upon learning that goods had been sold to Taney, it contacted New Buss whereupon it was informed by an employee of New Buss, who had also been an employee of Old Buss, that New Buss and Taney were involved in a dispute but, that as soon as that dispute was settled, Byrnes would receive its fee. Byrnes asserted that it never received its 5% commission, as promised by Old Buss and New Buss, and that it was owed a commission of $50,001.00, plus interest and cost of suit and attorneys' fees.

New Buss filed Preliminary Objections to Byrnes' complaint claiming that the court lacked the power to exercise *in personam* jurisdiction over New Buss. It claimed that Old Buss, if any entity, entered into an agreement with Byrnes and that New Buss was therefore not liable under the agreement. New Buss claimed that, since it is a foreign corporation, the only way in which the Pennsylvania courts could obtain *in personam* jurisdiction over it was through Pennsylvania's Long Arm Statute, 42 Pa.C.S.A. § 5322(a). It argued that the Long Arm Statute was inapplicable because it did not conduct the requisite amount of activity within the Commonwealth to bring it within the reach of the statute.

The trial court issued an order denying New Buss' Preliminary Objections and thereby concluded, that it was able to exercise *in personam* jurisdiction over New Buss. In ruling on the Preliminary Objection, the court looked at the pleadings and deposition testimony provided by the parties. The depositions provided to the court, were depositions taken of New Buss' Executive Vice President (the "Vice President") and New Buss' Secretary (who was also a Director and General Counsel for New Buss) (the "Secretary"). In his deposition testimony, the Vice President admitted that he had spoken with Byrnes' Chairman of the Board ("Byrnes' Chairman") and that he told Byrnes' Chairman that Byrnes would not receive its commission until New Buss' dispute with Taney was settled. He also stated that by making that statement to Byrnes' Chairman, he

meant to convey to Byrnes' Chairman that New Buss would pay Byrnes as soon as it reached a settlement with Taney. On the other hand, New Buss' Secretary, during his deposition, denied that New Buss had any contractual relationship with Byrnes. He stated that the agreement of sale that was entered into by the parties outlined the specific liabilities that New Buss agreed to assume from Old Buss and that the agreement allegedly entered into by Old Buss and Byrnes, was not one of those liabilities specifically mentioned in the agreement of sale. The trial court held that "[A]lthough this averment may be fairly characterized as a denial by New Buss of ever having assumed any of the liability on the agreement between Old Buss and [Byrnes] (and thus there is no basis for the exercise of jurisdiction), the allegation is not sufficiently supported by the evidence to allow me to find that no contract or liability under such a contract exists. (Trial Court Opinion at 3). The footnote following this conclusion stated that while its Secretary asserted that the agreement of sale entered into between the parties set forth the specific liabilities to be assumed by New Buss, New Buss had "failed to offer this document as evidence". In addition, the court stated that the Vice President had admitted having these conversations with Byrnes' Chairman. Therefore, based upon the failure of New Buss to supply the court with a copy of the agreement of sale prior to the issuance of its opinion and the fact that New Buss' Vice President acknowledged New Buss' liability under the agreement between Old Buss and Byrnes, the court rejected New Buss' claim that it had not assumed responsibility for the agreement.

The court, operating under its conclusion that New Buss had assumed Old Buss' liability under the agreement, addressed the question of whether or not it could exercise *in personam* jurisdiction over New Buss. In analyzing this question, the court applied the three-prong test set forth in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11 (1974) (the *"Proctor* Test").

First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. *Hanson v. Denckla* [357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)]. Secondly, the cause of action must arise from defendant's activities within the forum state. Lastly, the acts of the defendant must have substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

*Proctor*, 228 Pa.Superior Ct. at 18–19, 323 A.2d at 15.

The court stated that the first prong of the test was met when Byrnes, while in Pennsylvania, substantially performed the contract by providing Old Buss with Taney's name. While the court admitted that Old Buss' contacts with the Commonwealth were limited, it stated that the economic impact that the contract had on Pennsylvania (i.e. that one of its residents was to receive a 5% commission) additionally satisfied the first prong.

Having stated that the contract was substantially performed in Pennsylvania, the trial court held that the requirement set forth in the second prong was easily fulfilled because New Buss' failure to perform according to the terms of that contract gave rise to Byrnes' cause of action.

In discerning whether or not the last prong was met, the court noted that, in the case of a motion to dismiss for lack of personal jurisdiction, "the court must consider the evidence in the light most favorable to the non-moving party." *Eastern Continuous Forms, Inc. v. Island Business Forms, Inc.*, 355 Pa.Super. 352, 513 A.2d 466 (1986). It also noted that while New Buss had limited contacts with the Commonwealth, Byrnes had very little contact with North Carolina, thereby implying that while neither forum may be convenient for both parties, Pennsylvania was as reasonable forum as any. Thus, the third prong was also satisfied. The court therefore concluded that the exercise of *in per-*

*sonam* jurisdiction over the New Buss was proper and accordingly overruled its Preliminary Objection.

New Buss then filed its Answer and New Matter in which it denied owing Byrnes any money and asserted that the complaint failed to state any grounds upon which relief could be granted. Among the defenses set forth by New Buss in its New Matter were assertions that, Old Buss was the party with whom Byrnes contracted, that any claim that Byrnes had against New Buss was barred by the Statute of Frauds, that New Buss was not liable to Byrnes under any theory of successor liability, that Byrnes' claims were barred by lack of privity and consideration, that even if New Buss was enriched by Byrnes' endeavors, it was not unjustly enriched, and Byrnes' failure to reveal the circumstances underlying its claims to New Buss, barred the claims based upon theories of neglect or unclean hands.

New Buss also filed a complaint against Betty Buss, Jabet and Luma, as additional defendants, alleging that if liability was found with respect to the alleged contract, that liability should rest with one or all of the additional defendants, but not with New Buss. Byrnes subsequently filed a Petition to Strike the complaint against the additional defendants for failure to prosecute. The court approved the Stipulation for Withdrawal of Complaint Against Additional Defendants.

Byrnes then filed its Request for Admissions wherein it requested that New Buss and all additional Defendants admit or deny that (1) New Buss' only defense was that Old Buss was the entity with whom Byrnes contracted and that therefore Old Buss and not New Buss is liable to Byrnes; and (2) that New Buss had entered into an agreement with the additional defendants to indemnify and hold the additional defendants harmless or release them from liability in connection with Byrnes' claim.

Upon New Buss' failure to respond to the request, Byrnes filed a Motion for Summary Judgment. The motion stated that by its failure to respond to the Request for Admissions, New Buss had admitted that its only defense

was that Old Buss, and not New Buss, was liable to Byrnes and that New Buss had entered into an agreement with Old Buss to assume any liability that Old Buss may have with respect to Byrnes. Therefore, Byrnes argued that Summary Judgment would be proper because there were no genuine issues of material fact remaining. In response to this motion, New Buss filed a Brief in Opposition stating that the court should not enter judgement on the basis of New Buss' failure to respond to the Request for Admissions and that there were remaining issues of material fact.

New Buss then also filed a Motion to Reconsider the Order denying Preliminary Objections based upon the issue of jurisdiction. It requested that the trial court re-examine its reasoning in denying New Buss' argument regarding lack of *in personam* jurisdiction. New Buss raised the argument that the court's decision to grant *in personam* jurisdiction was based upon the *Proctor* Test and that that test had been displaced by the test set forth in *United Farm Bureau Mutual Ins. Co. v. United States Fidelity and Guaranty Co.*, 501 Pa. 646, 462 A.2d 1300 (1983).

The court granted Byrnes' Request for Summary Judgment and entered judgment in its favor. Its decision was based primarily upon New Buss' failure to respond to the Request for Admissions. The trial court, in its brief opinion, relied entirely upon the reasoning set forth in *Innovate, Inc. v. United Parcel Service, Inc.*, 275 Pa.Super. 276, 418 A.2d 720 (1980).

A party on whom requests for admissions of fact are served runs the risk that the facts as set forth in the request for admissions will be conclusively binding on him if he chooses not to file an answer to the request for admissions or files objections to the request.

*Id.*, 275 Pa.Superior Ct. at 283, 418 A.2d at 723.

As of the date of the summary judgment, the court had not yet responded to New Buss' Motion for Reconsideration. After granting Summary Judgment in favor of Byrnes, the court denied New Buss' Motion for Reconsider-

ation stating that the motion was moot in light of the fact that Summary Judgment had been granted.

New Buss subsequently filed this timely appeal raising three major issues.

1. Did the lower court have jurisdiction upon Appellant, under the tests set forth in *United States Fidelity & Guaranty Co.*, 501 Pa. 646, 462 A.2d 1300 (1983)?

2. Should the lower court have reconsidered its prior jurisdictional order when moved by Appellant immediately after *Derman v. Wilair Services, Inc.*, 404 Pa.Super. 136, 590 A.2d 317 (1991) was announced?

3. Was the lower court in any position to grant summary judgment for Appellee on this record?

## DISCUSSION

■ Initially, we will address whether the lower court had jurisdiction over New Buss under the test set forth in *United Farm*. But first it is important to set forth the basic means by which a Pennsylvania court can obtain *in personam* jurisdiction over a non resident.

The power of a court to exercise *in personam* jurisdiction over a non-resident defendant turns upon two considerations: (1) jurisdiction must be conferred by the state long-arm statute, and, (2) the exercise of jurisdiction under the statute must meet constitutional standards of due process.

*Hewitt v. Eichelman's Subaru, Inc.*, 341 Pa.Super. 589, 592, 492 A.2d 23, 24.

Pennsylvania's long-arm statute sets forth the basis upon which a Pennsylvania court may exercise personal jurisdiction over an individual (including a corporation) who does not reside within the Commonwealth:

(a) **General Rule.**—A tribunal of this Commonwealth may exercise personal jurisdiction over a person [intentionally omitted] who acts directly or by an agent, as to a cause of action or other matter arising from such person:

(1) Transacting any business in the Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:

(i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(ii) the doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

42 Pa.C.S.A. § 5322.

Merely satisfying the Long–Arm Statute, is not sufficient to grant a Pennsylvania court *in personam* jurisdiction over a foreign corporation.

> Satisfaction of the provisions of the Long Arm Statute alone is not sufficient to allow Pennsylvania courts to exercise jurisdiction over non-resident defendants, however. [Appellee] must also show that our courts' exercise of jurisdiction under the Long Arm statute conforms with federal Constitutional requirements of due process.

*Derman v. Wilair Services, Inc.*, 404 Pa.Super. 136, 590 A.2d 317, 320 (1991).

■ New Buss contends that the trial court erred in not applying the test for *in personam* jurisdiction that was set forth in *United Farm*, 501 Pa. 646, 462 A.2d 1300 (1983), in considering its preliminary objection. It is important to note that this court's standard of review in reviewing the trial court's ruling on preliminary objections is as follows:

> When Preliminary objections, if sustained, would result in the dismissal of an action, such objections should be sustained only in cases which are clear and free from doubt ... Moreover, when deciding a motion to dismiss for lack of personal jurisdiction, the court must consider the evidence in the light most favorable to the non-moving party. *Kenneth H. Oaks, Ltd., v. Josephson*, 390 Pa.Super. 103, 105, 568 A.2d 215, 216 (1989) (citations

omitted); see also *Delaware Valley Underwriting v. Williams & Sapp.*, 359 Pa.Super. 368, 373, 518 A.2d 1280, 1282 (1986).

*Derman*, 404 Pa.Super. at 140, 590 A.2d at 319.

New Buss argues that the trial court erred in applying the *Proctor* Test in determining its Preliminary Objections. Shortly after the trial court judge issued his opinion, the Pennsylvania Supreme Court handed down its decision in *Derman*. In deciding whether or not the court had in personam jurisdiction over the foreign corporation defendant, the *Derman* court applied the test set forth in *United Farm*, 501 Pa. 646, 462 A.2d 1300 (1983) rather than the *Proctor* Test. New Buss argues that the Pennsylvania Supreme Court, through its decision in *Derman* abandoned the *Proctor* Test. Based upon that notion, New Buss argues that the test for determining *in personam* jurisdiction set forth in *United Farm* is the proper test and should have been applied by the trial court in ruling on the Preliminary Objections. The *Derman* court summarized the *United Farm* test (the *"United Farm* Test") as follows:

> ... [A] determination of whether the Commonwealth's exercise of jurisdiction comports with due process involves examining the connection between the defendant, the forum and the litigation. This examination is conducted in order to (1) determine whether the exercise of jurisdiction would subject the defendant to the burden of litigating in a distant or inconvenient forum, and (2) insure that the Commonwealth does not reach out beyond the limits imposed on it as a coequal sovereign in a federal system.

*Derman*, 404 Pa.Super. at 145, 590 A.2d at 322.

The cause of action in *United Farm* stemmed from an automobile accident that occurred in Pennsylvania. The insured's assigned risk-carrier brought a declaratory judgment action against the insured's liability carrier to determine responsibility for the payment of Pennsylvania no-fault benefits. The insured was a resident of Indiana, the liability carrier was an Indiana corporation and the insur-

ance contract was entered into in Indiana. The only contact that Pennsylvania had with the dispute was that the accident occurred within the Commonwealth. The liability carrier argued that it was not responsible for paying the Pennsylvania no-fault benefits because Indiana did not provide no-fault benefits and that it lacked the requisite minimum contacts with Pennsylvania to make it subject to the jurisdiction of the Pennsylvania courts. The Pennsylvania Supreme Court agreed with the liability carrier's argument. The court cited that the liability carrier, while its contract had an all-encompassing clause that stated that the carrier would comply with the insurance laws of any state within the United States, "did not purposely avail itself of the privilege of acting within Pennsylvania, nor did it pursue activities within the state in such a way as to reasonably anticipate being haled into court there." *United Farm*, 501 Pa. 646, 655, 462 A.2d 1300, 1304.

The purpose of the *United Farm* Test is to:

... determine whether [Appellant] purposely availed [itself] of the privilege of conducting business within the Commonwealth. If, based on that evaluation, it appears that the [Appellant] should have reasonably anticipated being haled into court here, then we may properly exercise jurisdiction if that exercise is in keeping with notions of fair play and substantial justice. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Skinner v. Flymo, Inc.*, 351 Pa.Super. 234, 505 A.2d 616 (1986).

*Derman*, 404 Pa.Super. at 145, 590 A.2d at 322.

■ The court in *United Farm* was faced with the possibility of requiring an insurer to pay no-fault insurance in Pennsylvania when it had never purposely availed itself of acting within Pennsylvania. The present case presents a very different set of facts. Old Buss was aware that it was entering into an agreement with a Pennsylvania resident. It pursued Byrnes' offer to supply Old Buss with the name of a potential customer. The fact that Byrnes was a Pennsylvania company put Old Buss on notice that a breach

of that contract could subject Old Buss to the jurisdiction of the Pennsylvania courts. In fact, the correspondence between Old Buss and Byrnes clearly supports the notion that Old Buss was cognizant of the fact that, in the event that it consummated any sales with Taney, it would have an obligation to Byrnes. Furthermore, in his deposition, New Buss' Vice President admitted that he had spoken with Byrnes' Chairman and assured him that Byrnes would be paid upon settlement of New Buss' dispute with Taney. In light of this evidence and New Buss' failure to provide the trial court with a copy of the agreement of sale between Old Buss and New Buss, the lower court in ruling on New Buss' Preliminary Objection held that the record indicated that New Buss had stepped into the shoes of Old Buss with respect to the fee agreement.

Byrnes argues that while the trial court did not apply the *United Farm* Test, the purpose of the test was fulfilled. We agree. It is apparent that the trial court, by applying the *Proctor* Test, took into account whether New Buss should have reasonably anticipated being haled into court here if it breached its agreement with Byrnes. The trial court also addressed the issue of the reasonableness of choice of forum and concluded that Pennsylvania was a reasonable forum. As stated earlier, a preliminary objection should be sustained in cases which are free from doubt. The trial court judge, recognizing that the granting of New Buss' Preliminary Objection would result in dismissal of the suit, could not grant the Preliminary Objection because New Buss neglected to include a copy of the agreement of sale in the record and therefore failed to adequately refute Byrnes' claim of New Buss' successor liability. Therefore, after considering the evidence presented, in the light most favorable to the Byrnes, the trial court properly denied New Buss' Preliminary Objection.

■ The second issue that New Buss raises on appeal is whether the trial court should have reconsidered its prior jurisdictional order after *Derman* was announced. New Buss filed its Petition for Reconsideration after Byrnes'

Motion for Summary Judgment had been filed. The trial court issued its opinion regarding the Motion for Summary Judgment prior to ruling on the Motion for Reconsideration. The court did enter an opinion pursuant to the Motion for Reconsideration after the Summary Judgment had been entered and stated that, in light of the granting of the summary judgment, the jurisdiction issue was now moot. As we have already stated, the purpose of the *United Farm* Test as set forth in *Derman* was fulfilled by the trial court's application of the *Proctor* Test. No error was committed.

■ The third issue raised by this appeal is whether the trial court was in any position to grant summary judgment in favor of Byrnes. Byrnes served New Buss with a Request for Admissions wherein the it sought an admission or denial of two items. The first request asked New Buss if its only defense was, that Old Buss, if anyone, was liable to Byrnes under the agreement. The second request, sought to have the New Buss admit or deny that it had entered into an agreement with Old Buss whereby New Buss agreed to assume any liability that may fall upon Old Buss with respect to the contract with Byrnes. New Buss failed to respond to the request. Under Pa.R.C.P. 4014, failure to respond to a request for admissions deems the facts contained within the request, admitted by the party from whom the admission was sought. The trial court judge correctly relied upon the holding in *Innovate, Inc. v. United Parcel Service, Inc.*, 275 Pa.Super. 276, 418 A.2d 720 (1980), wherein the court held that, if the party from whom the admissions were sought fails to respond, by either answering or objecting thereto, within the established time frame, that party runs the risk of having those facts deemed admitted.

New Buss did not respond to the request and did not file an objection to the request. New Buss asserts that it chose not to respond to the request because the request was "unintelligible as well as self contradictory." (Appellant's brief at p. 30). This is not a sufficient reason for failing to

respond. The rule clearly states that the party receiving the request must respond by answering or objecting. In this case, New Buss chose to ignore the rule and run the risk of having the facts contained in the request deemed admitted.

Therefore, we find no error in the trial court's exercise of *in personam* jurisdiction over New Buss or in its granting Byrnes' Motion for Summary Judgment.

Judgment affirmed.