652 A.2d 865

**Charles BRINDLEY**

v.

**WOODLAND VILLAGE RESTAURANT, INC., K.B. Boukidis a/k/a Konstantinos Boukidis, and Vasilios Palvantis, Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 19, 1994.

Filed Jan. 13, 1995.

386

Jeffrey M. Cooper, West Chester, for appellants.

Andrew H. Gaber, Philadelphia, for appellee.

Before CIRILLO, OLSZEWSKI and HESTER, JJ.

CIRILLO, Judge:

Woodland Village Restaurant, Inc., K.B. Boukidis, a/k/a Konstantinos Boukidis, and Vasilios Pavlantis (hereinafter "Woodland") appeal from a judgment entered in the Court of Common Pleas of Philadelphia County. We vacate and remand for a new trial.

On May 18, 1990, appellee Charles Brindley and a few friends were in the Woodland Village Restaurant for breakfast. Upon entering the restaurant's bathroom, Brindley slipped and fell, sustaining head and back injuries as a result. Brindley stated that he had taken about two steps into the bathroom and slipped on something slimy; there was about a

quarter inch of water on the floor, along with ashes and cigarette butts. Brindley described the area of water on the floor as being about five to six feet in circumference. It appeared to him as if the water had been there for quite a while because it was starting to "cake up" around the perimeters. Brindley said he noticed the water after he fell to the ground.

Konstantinos Boukidis testified, along with two other witnesses, that the bathroom floor was clean immediately after the fall and before the fall. Following a bench trial before the Honorable Alfred J. DiBona, Jr., a verdict was entered in favor of Brindley and against all appellants in the amount of $8,800.00. Post-verdict motions were filed and denied. This appeal followed.

Woodland presents the following issues for our consideration:

(1) Was the decision against the weight of the evidence? [1]

(2) Did Brindley's counsel engage in misconduct?

(3) Did the verdict improperly pierce the corporate veil?

(4) Were Brindley's medical damages improperly established by defendant's failure to respond or object to request for admissions?

(5) Was defendant's negligence and Brindley's lack of negligence improperly established by defendant's failure to respond or object to request for admissions?

 Woodland argues that Brindley's counsel engaged in misconduct when he advised the trial judge that one of Woodland's witnesses had solicited both Brindley and Brindley's counsel for money and that the witness was a drug addict. Woodland claims that this was a deliberate attempt to prejudice the court. Woodland's allegations of misconduct, however, were not raised in post-verdict motions. Accordingly, we shall not address this issue. Post-trial relief may not be granted unless the grounds therefor are specified in the

1. In light of our ultimate disposition in this case, we find it more practical to address Woodland's first issue in conjunction with its last two issues.

motion; grounds not specified are deemed waived. *See* Pa. R.C.P. 227.1(b); *Puleo v. Thomas*, 425 Pa.Super. 285, 624 A.2d 1075 (1993). Additionally, Woodland has not set forth any authority in support of its argument; rather, it simply concludes that counsel was attempting to prejudice the trial court. *See* Pa.R.A.P. 2119 (the argument shall be followed by such discussion and authorities as are deemed pertinent). We find this issue to be waived.

Boukidis and Pavlantis next claim that, as owners/employees of their corporation, the corporate form shields them from personal liability and, accordingly, "piercing the corporate veil" and entering a verdict against all defendants was improper. We must determine whether it was proper to hold Boukidis and Pavlantis jointly and severally liable for the alleged negligence at issue.[2]

Boukidis and Pavlantis primarily rely upon *Burton v. Boland*, 339 Pa.Super. 444, 489 A.2d 243 (1985) for the proposition that the corporate entity will be disregarded only when it is used to defeat public convenience, justify wrong, perpetrate fraud, or defend crime. *Id.* Boukidis and Pavlantis conclude that, because no fraud or illegality has been alleged here, Woodland's corporate form shields them from personal liability. Although Boukidis and Pavlantis set forth a correct statement of the law, as evidenced by the following summary of relevant case law, this is not the end of the analysis.

In *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 470 A.2d 86 (1983), the appellants, a group of homeowners, filed a complaint against Milzoco Builders, Inc., Carroll Builders, Inc., and Chester Miller, Eugene Cook, and Wesley Zollers, individually.[3] The only issue was whether this court erred in affirming the dismissal of the actions in trespass against appellees on the ground that the homeowners failed to plead facts on

**2.** Although the case was tried to verdict, we label the negligence at issue as "alleged" negligence due to our ultimate determination that a new trial is warranted.

**3.** Appellees Miller, Cook and Zollers served as President, Vice–President, and Secretary of Milzoco Builders, Inc., respectively. Additionally, Cook and Zollers were the sole shareholders of Carroll Builders, Inc.

which Miller, Cook, and Zollers could be held personally liable for the alleged tortious actions and omissions of Milzoco Builders and Carroll Builders.[4] The Pennsylvania Supreme Court reversed this court and concluded that the facts generally averred in the homeowners' complaint stated a cause of action in tort against Miller, Cook, and Zollers.

In reaching its conclusion, the Court stated that the "Superior Court ... incorrectly held that fraud, criminality or unauthorized acts must be present to find corporate agents liable." *Id.* at 619, 470 A.2d at 88.[5] The Court explained that,

[i]n the instant case, ... appellants have not challenged the legitimacy of Milzoco Builders or Carroll Builders nor have they alleged that appellees have used the corporate form merely as a vehicle by which they seek to engage in illegal or improper acts with impunity. Instead, appellants seek to hold Miller, Cook and Zollers liable on the theory that they personally participated in the alleged tortious acts committed on behalf of the corporations.

*Id.* at 621, 470 at 89.

█ In recognizing this difference, the Pennsylvania Supreme Court distinguished the theory of "piercing the corporate veil" from the "participation theory." .

4. The homeowners' complaints stated, generally, that the appellees were aware, or should have been aware, of potential drainage problems at a particular housing development and, therefore, were negligent in failing to take appropriate measures to eliminate or minimize the problems.

5. In *McKenna v. Art Pearl Works, Inc.*, 225 Pa.Super. 362, 310 A.2d 677 (1973), this court stated:

We have said that the "equitable doctrine of piercing the corporate veil [should be employed] to prevent the perpetration of wrong; to prevent its use as a shield for illegal and wrongful conduct; or where its use, as a technical device, brings about injustice or an inequitable situation so that justice and public policy demand it be ignored. However, we have not done so where the rights of innocent parties are involved and the corporation is used for a legal purpose, as otherwise the entire theory of the corporate entity would be made useless."

*Id.* at 366, 310 A.2d at 679 (quoting *Commonwealth v. Price Bar, Inc.*, 203 Pa.Super. 481, 484, 201 A.2d 221, 222 (1964)); *see also Zubik v. Zubik*, 384 F.2d 267 (3d Cir.1967).

There is a distinction between liability for individual participation in a wrongful act and an individual's responsibility for any liability-creating act performed behind the veil of a sham corporation. Where the court pierces the corporate veil, the owner is liable because the corporation is not a bona fide independent entity; therefore, its acts are truly his. Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity.

*Id.* at 621, 470 A.2d at 89–90 (footnote omitted); *accord Village at Camelback v. Carr*, 371 Pa.Super. 452, 462, 538 A.2d 528, 533 (1988), *aff'd*, 524 Pa. 330, 572 A.2d 1 (1990); *see also Loeffler v. McShane*, 372 Pa.Super. 442, 445–46, 539 A.2d 876, 878 (1988). *Wicks* expressly confirmed that Pennsylvania law recognizes the participation theory as a basis of liability[6] and, importantly, noted that, under this theory, a corporate officer can be held liable for "misfeasance," *i.e.*, the improper performance of an act, but not for "mere nonfeasance," *i.e.*, the omission of an act which a person ought to do. *Wicks*, 503 Pa. at 621, 470 A.2d at 90; *Village at Camelback*, 371 Pa.Super. at 463, 538 A.2d at 533; *Loeffler*, 372 Pa.Super. at 446, 539 A.2d at 878.

Here, there has been no challenge to Woodland's legitimacy, nor has it been alleged that Boukidis and Pavlantis have used the corporate form as a vehicle by which they seek to engage in illegal or improper acts. Thus, it is clear from the foregoing case law that we must analyze the instant case in light of the participation theory, *i.e.*, the attempt to assess direct liability in tort against a person acting as an officer of a

6. "The law of Pennsylvania has long recognized that personal liability can be found against a corporate officer who actually participates in the wrongful, injury-producing act." *Amabile v. Auto Kleen Car Wash*, 249 Pa.Super. 240, 250, 376 A.2d 247, 252 (1977) (citing *Chester–Cambridge Bank & Trust Co. v. Rhodes*, 346 Pa. 427, 433, 31 A.2d 128, 131 (1943)).

corporation, rather than under a theory of piercing the corporate veil.

In *Wicks*, the Court held that the general averments of negligence set forth in the homeowners' complaints—that the appellees knew that the location of the proposed development created an unreasonable risk of drainage problems which occurred and, having the power to do so, they deliberately ordered the work to proceed—were sufficiently pleaded to withstand demurrer. Here, we are not dealing with whether a claim of negligence can be sustained as a cause of action; thus, we need not be held to such a stringent standard as that for sustaining a demurrer. *See Village at Camelback, supra* (finding that appellant pleaded sufficient facts to survive a demurrer on the ground that a controlling stockholder/partner of various corporations personally committed, *inter alia*, negligence, misrepresentation and conversion).

More instructive for our purposes is this court's decision in *Loeffler v. McShane, supra.* There, we were called upon to decide whether a corporate officer (Mr. Zone), who supervised a settlement on the refinancing of a mortgage, could be held personally liable for the loss suffered by the mortgagors when Mr. Zone negligently authorized the payment of the mortgagors' settlement funds to the wrong party. Mr. Zone did not contest the fact that he was a tortfeasor; instead, he argued that the trial court erred as a matter of law by holding him personally liable for the damage caused by his negligence. This court did not agree, and affirmed the trial court's finding that Mr. Zone was liable in his individual capacity to the mortgagors.

In reaching this result, we relied upon the participation theory, and cited both *Wicks* and *Village at Camelback* in support thereof. Specifically, the court focused upon the participation theory's distinction between misfeasance and nonfeasance, the former being that for which a corporate officer can be held liable.

The trier of fact found that appellant "specifically directed the particular act to be done" which resulted in the loss of

the mortgagors' settlement funds. The record clearly supports an inference that appellant, without first obtaining the permission of either the mortgagor or the mortgagee, ordered his clerk to pay the settlement check to a party who was not authorized to receive the check. *This active involvement in the misallocation of funds involved both misfeasance and negligence. The combination of the two is clearly sufficient to support a finding of personal liability on the part of a corporate officer.*

*Loeffler,* 372 Pa.Super. at 447, 539 A.2d at 879 (emphasis added). *See Chester–Cambridge Bank & Trust Co. v. Rhodes,* 346 Pa. 427, 31 A.2d 128 (1943) (unlike a corporate officer who knowingly participates in a wrongful act, no liability attaches where an officer is charged with nonfeasance); *see also Bank of Landisburg v. Burruss,* 362 Pa.Super. 317, 524 A.2d 896 (1987) (pursuant to the participation theory, corporate president's conduct involved a sufficient degree of participation to impose tort liability for conversion, jointly and severally with the corporation, where he participated in that conversion by personally visiting the farm to negotiate the sale of cattle, personally made arrangements for the delivery of the cattle, and neglected to search the recording system for evidence of security interest in those cattle); *Amabile v. Auto Kleen Car Wash,* 249 Pa.Super. 240, 376 A.2d 247 (1977) (engineer who acted as agent for corporation may be held individually liable for designing a car wash in a negligent manner).

We must ultimately determine, therefore, whether Boukidis' and Pavlantis' alleged negligence should be categorized as nonfeasance or misfeasance for purposes of deciding whether they were correctly held jointly and severally liable. In light of the facts of this case and the case law set forth above, we find that the trial court erred in entering a verdict of joint and several liability against Boukidis and Pavlantis.

■ In *Loeffler,* there existed evidence of overt acts, specifically directed by the corporate officer, which led to the loss of the settlement funds. Such was not a case of "passive" negligence or nonfeasance but, rather, an active involvement in the misallocation of funds. The record in the instant case,

however, reveals no such evidence of misfeasance. A clarification of the difference between nonfeasance and misfeasance was enunciated in *Nelson v. Duquesne Light Co.,* 338 Pa. 37, 12 A.2d 299 (1940):

> [N]egligence might consist not only of "nonfeasance, that is, omitting to do, or not doing, something which ought to be done, which a reasonable and prudent man would do," but also of "a misfeasance, that is, the doing of something which ought not be done, something which a reasonable man would not do, or doing it in such a manner as a man of reasonable and ordinary prudence would not do it, in either case leading to mischief or injury."

*Id.* at 44, 12 A.2d at 303. Here, the alleged negligence or inaction which led to the condition which caused Brindley's injury is plainly more analogous to negligence consisting of nonfeasance, *i.e.,* omitting to do something which ought to be done. Boukidis and Pavlantis allegedly neglected their duty to clean and keep safe the restaurant's restroom. There was no evidence, however, that the condition existing in the restroom was a result of an active, knowing participation by Boukidis and Pavlantis. *Chester–Cambridge, supra; Loeffler, supra.* Simply stated, Boukidis and Pavlantis have not engaged in the evils the participation theory seeks to address.

■ We find it persuasive that the theory of piercing the corporate veil, which is closely related to the participation theory, is imposed cautiously in Pennsylvania; in fact, there is a presumption against applying it.

> In applying the test (for piercing the corporate veil), ... any court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception.... Care should be taken on all occasions to avoid making "the entire theory of the corporate entity ... useless...."]

*Kellytown Company v. Williams,* 284 Pa.Super. 613, 622, 426 A.2d 663, 668 (1981) (quoting *Zubik v. Zubik,* 384 F.2d 267, 273 (3d Cir.1967), *cert. denied,* 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968)); *see Wedner Unemployment Compensa-*

*tion Case*, 449 Pa. 460, 296 A.2d 792 (1972). To hold Boukidis and Pavlantis jointly and severally liable with Woodland would serve to make the theory of the corporate entity useless. The trial court erred in imposing a verdict against Woodland, Boukidis, and Pavlantis, jointly and severally.

Woodland's last two issues are closely related. Specifically, it asserts that Brindley's medical damages [7] and Woodland's negligence were improperly established by Woodland's failure to respond or object to Brindley's request for admissions. Requests for admissions are governed by Pa.R.C.P. 4014. According to that rule, facts set forth in a request for admissions are deemed admitted in the event of an untimely response to the request. Pa.R.C.P. 4014(b).

The request for admissions to which Woodland objects to being admitted are as follows:

II. That each of the following statements are true:

A. All of the medical treatments set forth in the medical records attached to this Request in Exhibits "A–E" were necessary for the injuries sustained in the subject accident.

B. All the medical bills attached to this Request in Exhibits "A–E" were reasonable for the treatments rendered.

C. All the medical diagno[ses] set forth in the medical records attached to this Request in Exhibit "A–E" were caused by the subject accident.

\* \* \* \* \* \*

T. The subject accident was caused solely by the negligence of Woodland Village Restaurant, Inc.

U. The subject accident was caused solely by the negligence of K.B. Boukidis.

V. The subject accident was caused solely by the negligence of Vasilios Pavlantis.

W. At the time of the accident, Charles Brindley was not negligent in any manner whatsoever.

With regard to the medical documents (A–C), Woodland admits, in its appellate brief, that the documents submitted

7. The record belies Brindley's claim that his medical records went into evidence without objection. Woodland specifically objected to the admission of these records. N.T. p. 37–38.

were genuine and authentic. However, as to the necessity of the treatment, reasonableness of the bills, and medical diagnosis, Woodland asserts that these conclusions were improperly admitted into evidence via the request for admissions. The trial court, Woodland argues, had no medical testimony upon which to base a finding of damages; Brindley produced no medical testimony other than the medical reports and bills. With regard to the remaining request for admissions (T–W), concerning Woodland's negligence, Woodland avers that it is improper for a request to require an admission of a question of law.

Specifically, Rule 4014 provides, in pertinent part:

(a) A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rules 4003.1 through 4003.5 inclusive set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness, authenticity, correctness, execution, signing, delivery, mailing or receipt of any document described in the request. Copies of documents shall be served with the request unless they have been or are otherwise furnished or available for inspection and copying in the county....

(b) Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within thirty days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission of a verified answer or an objection addressed to the matter, signed by the party or by his attorney....

\* \* \* \* \* \*

(d) Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission....

Pa.R.C.P. 4014.

The purpose of the procedure provided in Rule 4014 is to clarify issues raised in prior pleadings with the goal of

expediting the litigation process. *Commonwealth v. Diamond Shamrock Chemical Co.*, 38 Pa.Commw. 89, 94, 391 A.2d 1333, 1336 (1978); *see* Goodrich–Amram 2d § 4014:1, p. 444 ("The Rule [Rule 4014] is designed to expedite the production and authentication of evidence that is not controverted by the litigants.").

In resolving this issue, we are persuaded by the Commonwealth Court's decision in *Dwight v. Girard Medical Center*, 154 Pa.Commw. 326, 623 A.2d 913 (1993). While *Dwight* differs procedurally in that it involves an order granting summary judgment, it is sufficiently analogous in other respects so as to lend adequate support to our decision in the present case.

Appellant Dwight filed an action against the Commonwealth of Pennsylvania, Department of Corrections, alleging that he was injured while an inmate at the Philadelphia County Detention Center. In the course of discovery, the Department submitted to Dwight a request for admissions stating, *inter alia:* that adequate and proper medical treatment was made available to Dwight; that he received adequate and proper medical care when he permitted it to be provided; that the care given was appropriate and proper under the circumstances; and that the Department was not negligent or careless in any respect. Dwight did not file an answer to the request for admissions by the specified date, and the admissions in the request were thus deemed admitted. The trial court entered an order granting summary judgment and dismissing Dwight's complaint against the Department.

In support of its holding that the grant of summary judgment against Dwight was premature, the Commonwealth Court stated:

[I]f the subject matter of the admissions is broad and far-reaching, a court should permit withdrawal [of the admissions] in the absence of bad faith or substantial prejudice. *Moreover, requests for admissions must call for matters of fact rather than legal opinions and conclusions.* Since conclusions of law are not within the permissible scope of

requests for admissions under Rule 4014, those statements in the requests for admissions which constitute conclusions of law are not properly before the court.

*Id.* at 333, 623 A.2d at 916 (citations omitted) (emphasis added); *see Diamond Shamrock Chemical Co., supra* (conclusions of law are not within the permissible scope of requests for admissions under Pa.R.C.P. No. 4014); *cf. Richard T. Byrnes Co., Inc. v. Buss Automation, Inc.,* 415 Pa.Super. 549, 609 A.2d 1360 (1992) (facts contained in unanswered request for admissions—citing that appellant's only defense was that a certain entity was the one with whom appellant contracted, and that appellant had entered into an agreement with additional defendants—were deemed admitted). "[The matters set forth in the Department's request for admissions] are not matters of fact but are conclusions of law not within the permissible scope of request for admissions and thus were not properly before the trial court...." *Dwight,* 154 Pa.Commw. at 333, 623 A.2d at 916.

 Comparing the *Dwight* case to the instant case, the Department's request for admissions regarding medical treatment and medical care are strikingly similar to Brindley's requests concerning his medical care and medical diagnosis. By the same token, here, as in *Dwight,* the request for admissions set forth questions concerning the negligence of the defendants. The request for admissions challenged here go well beyond requests for "opinion of fact" or "application of law to fact" permitted by Rule 4014. The requests concerning the medical records call for legal conclusions (A–C); a show of damages is one element in proving a negligence claim. A more blatant display of legal conclusions is evident in the remaining challenged request for admissions (T–W); these question the cause of the negligence at issue. We conclude, therefore, that the challenged admissions were not properly before the trial court; they cannot be used to sustain the elements of Brindley's case.

The trial court, in denying post-verdict motions, opined that "[t]hese admissions, and the testimony of the defendant, Konstantinos Boukidis, provided more than sufficient evidence to

establish the liability of the individual defendants...." Because the challenged admissions were not properly before the trial court, we find that Brindley failed to establish damages and causation. As mentioned previously, there was no medical testimony presented at trial; only the medical reports and the "admissions" were provided for the trial judge.

It follows that the trial court's verdict cannot sustain a challenge regarding the weight of the evidence. A new trial will not be granted on the basis of a weight of the evidence claim unless evidence supporting the verdict is so inherently improbable or at a variance with admitted or proven facts or with ordinary experience as to render the verdict shocking to the court's sense of justice. *Houseknecht v. Walters*, 404 Pa.Super. 85, 590 A.2d 20 (1991). This court will review the action of the court below and will reverse only if it determines that it acted capriciously or palpably abused its discretion. *Burrell v. Philadelphia Electric Co.*, 438 Pa. 286, 287, 265 A.2d 516, 517 (1970); *see also Phillips v. Schoenberger*, 369 Pa.Super. 52, 57, 534 A.2d 1075, 1077 (1987).

Here, the evidence in support of the verdict was based, in part, upon admissions improperly before the court. The trial court, therefore, palpably abused its discretion when it rendered a verdict in favor of Brindley.

Vacated and remanded for a new trial. Jurisdiction relinquished.

OLSZEWSKI, J., files a concurring opinion.

OLSZEWSKI, Judge, concurring:

I concur with the majority's result here. I believe, however, that the statement "All medical bills attached to this Request in Exhibits 'A–E' were reasonable for the treatments rendered," was properly deemed admitted. The reasonableness of the medical bills does not call for a conclusion of law, but is instead a question of fact.

I do agree that requests for admissions II(A), II(C), and II(T–W) were erroneously deemed admitted. Because these

statements constituted the major portions of appellee's case establishing the four classic elements of a negligence action— duty, breach, causation, and harm—these statements were prejudicial to appellants. It was, therefore, reversible error to admit them into evidence. Accordingly, it is unnecessary for the majority to address appellants' claim that the verdict was against the weight of the evidence.