J-S95034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LEBANON VALLEY INSURANCE CO., a/s/o SIDNEY FLAXMAN AND ERIC FLAXMAN, | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| BRIAN FLAXMAN | : | No. 352 EDA 2016 |

Appeal from the Order January 6, 2016
in the Court of Common Pleas of Montgomery County,
Civil Division, No(s): 2015-01589

BEFORE:  STABILE, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED MARCH 29, 2017**

Lebanon Valley Insurance Co. ("Lebanon"), a/s/o Sidney Flaxman and

Eric Flaxman, appeals from the Order granting the Preliminary Objections

filed by Brian Flaxman ("Flaxman") and striking Lebanon's Complaint against

Flaxman.  We affirm.

The factual allegations raised in Lebanon's Complaint, filed on March 2,

2015, are particularly relevant to this appeal; accordingly, we set them forth

verbatim:

> 3.  As of February 16, 2013, Sidney [] Flaxman, individually, and Eric [] Flaxman, Trustees, were owners of real estate located at 827 South Trooper Road, Norristown, Montgomery County, Pennsylvania, 19403 ("Premises").
>
> 4.  By Lease Agreement dated January 1, 2009, Premises [was] leased by its owners to Valley Forge Beef and Ale, Inc. [(hereinafter "Valley Forge")], which remained in effect as of February 16, 2013.

5. By virtue of the aforesaid Lease, Valley Forge [] had possession and control of Premises.

6. As of February 16, 2013, [Flaxman] was sole shareholder, President and General Manager of Valley Forge [].

7. Premises contained various rooms or enclosed areas in the basement.

8. A water heater and boiler were located in a basement room[,] which measured approximately 7 feet wide by 15 feet long.

9. Sometime prior to February 16, 2013, [Flaxman's] authorized representatives and employees became aware that the pilot light for the water heater would go out.

10. Upon information and belief, [Flaxman] removed the cover plate that allowed access to the pilot light and used a stick lighter to re-ignite it.

11. In order to avoid repeated removal of the cover plate, [Flaxman] did not replace the cover plate.

12. Upon information and belief, despite the malfunction and/or need to re-light the water heater, [Flaxman] did not communicate any concerns relating to the water heater to the property owners, nor did [Flaxman] have the unit serviced by a qualified professional.

13. [Flaxman] also directed and permitted the room, in which the water heater was located, to be used for storage and [he] was aware of various cardboard boxes containing dishes and other items, as well as other combustibles, in close proximity to the water heater.

14. On February 16, 2013, a fire started at the Premises resulting in substantial damage to it.

15. As of February 16, 2013, the owners of Premises insured it with [Lebanon].

16. The aforesaid fire was caused by the placement of combustible materials in close proximity to the open and uncovered pilot light of [the] water heater.

17. As a result of the fire, [Lebanon] has been and will be required to cover significant losses of its insureds, the owners of [] Premises, in an amount that has not yet been determined.

18. The aforesaid fire was caused by the negligence of [Flaxman] in that he:

    (a) Failed to service the water heater;

    (b) Failed to replace the cover plate over the pilot light after reigniting it;

    (c) Allowed or directed placement of combustibles in close proximity to the water heater;

    (d) Failed to notify owners of Premises of issues relating to the functioning of the water heater;

    (e) Failed to store or direct storage of items properly in the basement of Premises; and

    (f) Failed to replace the cover of the water heater despite the close proximity of combustibles.

Complaint, 3/2/15, at ¶¶ 3-18.[1]

Approximately one week after Lebanon's filing of the Complaint,

Flaxman filed Preliminary Objections in the nature of a demurrer, asserting

---

[1] The trial court pointed out in its Pa.R.A.P. 1925(a) Opinion that "[Lebanon] previously had filed an essentially identical complaint against Valley Forge …, at Montgomery County docket number 13-21226 [(hereinafter "the Valley Forge Complaint")], [which is] pending before the [trial] court." Trial Court Opinion, 7/25/16, at 2 n.1; *see also id.* at 7 (wherein the trial court explained that the Complaint in the instant case and the Valley Forge Complaint "are so intertwined that in Paragraph 9 of the present [C]omplaint, [Lebanon] co-mingles the matters and references other [Valley Forge] employees[,] not just … Flaxman."); Preliminary Objections, 3/13/15, Exhibit B (the Valley Forge Complaint).

- 3 -

that Lebanon had failed to plead a viable cause of action against him. Lebanon thereafter filed an Answer and Brief in Opposition to the Preliminary Objections.

On January 6, 2016, the trial court entered an Order granting the Preliminary Objections and striking Lebanon's Complaint. Lebanon timely filed a Notice of Appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

Lebanon now presents the following issue for our review: "Whether the trial court erred in granting [Flaxman's] Preliminary Objections[?]" Brief for Appellant at 4.

Appeals from orders sustaining a preliminary objection in the nature of a demurrer are reviewed under the following standard:

> A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.

> In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of

> [a] claim or a dismissal of [a] suit, preliminary objections will be sustained only where the case is free and clear of doubt. Thus, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Hill v. Slippery Rock Univ.*, 138 A.3d 673, 676-77 (Pa. Super. 2016) (citation omitted); *see also In re Luongo*, 823 A.2d 942, 968 (Pa. Super. 2003) (stating that "[w]hen a preliminary objection is raised in the nature of a demurrer, we are limited to determining whether, on the basis of the allegations pled, any cause of action may be recognized at law.").

Lebanon argues that the trial court erred in granting Flaxman's Preliminary Objections because Lebanon had, in fact, pled in its Complaint a viable cause of action against Flaxman, in his individual capacity.[2] Brief for Appellant at 8. Specifically, Lebanon contends that Flaxman could be held liable for his tortious actions, which allegedly contributed to the fire, under the "participation theory" of liability. *Id.* at 9.

In *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86 (Pa. 1983), the Pennsylvania Supreme Court explained the participation theory of individual liability (as distinguished from the theory of piercing the corporate veil) as follows:

> There is a distinction between liability for individual participation in a wrongful act and an individual's responsibility for any

---

[2] Lebanon did not seek to hold Flaxman personally liable by piercing the corporate veil, *i.e.*, Lebanon neither challenged the legitimacy of Valley Forge as a corporation nor alleged that Flaxman used the corporate form merely as a vehicle in which to engage in improper/illegal acts.

liability-creating act performed behind the veil of a sham corporation. Where the court pierces the corporate veil, the owner is liable because the corporation is not a bona fide independent entity; therefore, its acts are truly his. Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity.

*Id.* at 89-90 (footnote and citation omitted); *see also Amabile v. Auto Kleen Car Wash*, 376 A.2d 247, 252 (Pa. Super. 1977) (*en banc*) (stating that "[t]he law of Pennsylvania has long recognized that personal liability can be found against a corporate officer who actually participates in the wrongful, injury-producing act.").

> To impose liability on a corporate officer pursuant to the participation theory, a plaintiff must establish that the corporate officer engaged in misfeasance, *i.e.*, "the improper performance of an act." However, a corporate officer cannot be held personally liable for nonfeasance, *i.e.*, "the omission of an act which a person ought [] to do."

*Shay v. Flight Sea Helicopter Servs., Inc.*, 822 A.2d 1, 17 (Pa. Super. 2003) (quoting *Brindley v. Woodland Village Rest.*, 652 A.2d 865, 868 (Pa. Super. 1995)); *see also Brindley*, 652 A.2d at 869 (clarifying the difference between nonfeasance and misfeasance as follows: "Negligence might consist not only of nonfeasance, that is, omitting to do, or not doing, something which ought to be done, which a reasonable and prudent man would do, but also of a misfeasance, that is, the doing of something which ought not be done, something which a reasonable man would not do, or

doing it in such a manner as a man of reasonable and ordinary prudence would not do it, in either case leading to mischief or injury." (citation and quotation marks omitted)).

According to Lebanon, the Complaint alleges that Flaxman personally engaged in acts of misfeasance, not merely nonfeasance, by "participat[ing] in a series of affirmative action[]s that resulted in the fire in question." Brief for Appellant at 14. Specifically, Lebanon contends that

> [w]hen read as a whole, the Complaint demonstrates that [Flaxman] committed misfeasance based upon the following:
>
> 1. [Flaxman] removed the [water heater's] cover plate that allowed access to the pilot light and used a stick lighter to re-ignite it. *See* [Complaint, 3/2/15, at] ¶ 10.
>
> 2. After removing the cover plate, [Flaxman] purposely did not replace it in order to avoid repeated removal of the cover plate in the future, thus, leaving an open pilot light. *See* [*id.* at] ¶¶ 10-11.
>
> 3. Thereafter, [Flaxman] directed and permitted the room to be used for storage for cardboard boxes and other combustibles in close proximity to the water heater[,] with an open pilot light[,] despite the lack of a cover plate on it. *See* [*id.* at] ¶¶ 11-13.

Brief for Appellant at 13-14.

Lebanon argues that the facts of this case are analogous to those presented in *Wicks*, *supra*, wherein our Supreme Court held that the plaintiffs had properly pled misfeasance by the defendants/corporate officers under the participation theory. *Id.* at 10. In *Wicks*, plaintiffs were homeowners who filed an action (alleging, *inter alia*, negligence and

misrepresentation) against the company that had constructed their homes, as well as corporate officers of the company, in their individual capacity (hereinafter "the individual defendants"). *Wicks*, 470 A.2d at 87. Plaintiffs claimed that defendants had negligently constructed their homes (which were part of a new development called Monroe Acres) in a basin wherein surface water and sewage runoff would periodically flood plaintiffs' yards and basements, making their homes uninhabitable and dangerous. *Id.* Plaintiffs sought to hold the individual defendants "liable on the theory that they personally participated in the alleged tortious acts committed on behalf of the corporations." *Id.* at 89. The Supreme Court held that a cause of action had been sufficiently pled under the participation theory to withstand a demurrer. *Id.* at 87, 90. Specifically, the Supreme Court stated that "the pertinent averments in the[] complaints can be read as setting forth, generally, that the individual [defendants] actually knew that the location of the proposed Monroe Acres Development created, at least, an unreasonable risk of the drainage problems which occurred and that, having the power to do so, they deliberately ordered the work to proceed." *Id.* at 90. In so holding, the Court ruled that the individual defendants' alleged knowing and active conduct amounted to misfeasance. *Id.*

Lebanon further contends that the present case is distinguishable from the situation presented in *Brindley*, *supra*. In that case, the plaintiff sued the owners/employees (hereinafter "the individual employees") of a

restaurant/corporation, in their individual capacity, after he had sustained personal injuries from slipping and falling on a pool of water while using the restaurant's bathroom.  ***Brindley***, 652 A.2d at 866.  After collecting and discussing several cases involving the participation theory, ***see id.*** at 868-69, this Court ruled as follows:

> [T]he alleged negligence or inaction [that] led to the condition which caused [plaintiff's] injury is plainly more analogous to negligence consisting of nonfeasance, *i.e.*, omitting to do something which ought to be done.  [The individual employees] allegedly neglected their duty to clean and keep safe the restaurant's restroom.  There was no evidence, however, that the condition existing in the restroom was a result of an active, knowing participation by [the individual employees].  Simply stated, [the individual employees] have not engaged in the evils the participation theory seeks to address.

***Id.*** at 870 (internal citations omitted).  Notably, in so holding, the Court cautioned, "[w]e find it persuasive that the theory of piercing the corporate veil, which is closely related to the participation theory, is imposed cautiously in Pennsylvania; in fact, there is a presumption against applying it."  ***Id.***; ***see also id.*** (stating that "[i]n applying the test (for piercing the corporate veil), any court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception[.]  Care should be taken on all occasions to avoid making the entire theory of the corporate entity useless." (citation, quotation marks and ellipses omitted)).

In its Rule 1925(a) Opinion, the trial court addressed Lebanon's claim as follows:

[T]he gravamen of [Lebanon's C]omplaint is nonfeasance. [Lebanon] claims that [Flaxman] failed to service the water heater; failed to replace the cover on the pilot light; and failed to notify the owners of problems with the water heater. Thus, [Lebanon] claims that [Flaxman] failed to do certain acts, making his actions nonfeasance. Moreover, to the extent that [Lebanon] possibly hints at misfeasance by utilizing the word "directed," in paragraph 18(c) and (e) of the [C]omplaint, the [trial] court concluded that[,] when viewing the pleading consistently, and as a whole, the allegation is really that [Flaxman] failed to remove stored items located near a malfunctioning water heater (nonfeasance).

Trial Court Opinion, 7/25/16, at 6-7 (emphasis and footnote omitted). We are persuaded by the trial court's rationale, which is supported by the language in the Complaint, which, taken as a whole, alleges nonfeasance by Flaxman. The key paragraph of the Complaint, paragraph 18, avers as follows:

18. The aforesaid fire was caused by the negligence of [Flaxman] in that he:

(a) **Failed to service** the water heater;

(b) **Failed to replace** the cover plate over the pilot light after reigniting it;

(c) Allowed or directed placement of combustibles in close proximity to the water heater;

(d) **Failed to notify** owners of Premises of issues relating to the functioning of the water heater;

(e) **Failed to store** or direct storage of items properly in the basement of Premises; and

(f) **Failed to replace** the cover of the water heater despite the close proximity of combustibles.

Complaint, 3/2/15, at ¶ 18 (emphasis added). The Complaint alleged negligent inaction on the part of Flaxman, which, we conclude, is more analogous to the nonfeasance alleged in **Brindley**. The only affirmative action on the part of Flaxman, pled by Lebanon in its Complaint, was his removal of the pilot light cover plate in order to re-ignite the flame to the water heater, which was already malfunctioning.[3] Complaint, 3/2/15, at ¶ 10. Particularly where this sole allegation is viewed in the context of the Complaint as a whole, which alleges nonfeasance and failure to act, misfeasance has not been pled. Moreover, unlike the situation presented in **Wicks**, Lebanon did not plead that Flaxman "actually knew that" the removal of the cover plate "created, at least, an unreasonable risk of" causing a fire. **Wicks**, 470 A.2d at 90.

Based upon the foregoing, we conclude that Lebanon failed to plead a viable cause of action against Flaxman, and the trial court therefore properly granted Flaxman's Preliminary Objections and struck Lebanon's Complaint.

Order affirmed.

Judge Moulton joins this memorandum.

Judge Stabile files a dissenting memorandum.

---

[3] Lebanon did not plead that Flaxman personally played any active role in causing the water heater to malfunction.

- 11 -

J-S95034-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2017