570 A.2d 549

**HERZOG OIL FIELD SERVICE, INC., Appellant,**

v.

**OTTO TORPEDO COMPANY and Benson Oil Company and Glenn Benson.**

Superior Court of Pennsylvania.

Submitted Aug. 23, 1989.

Filed Feb. 12, 1990.

Charles J. Duke, Bradford, for appellant.

Joseph M. Marasco, Bradford, for Otto Torpedo Co., appellee.

William J. Kubiak, Bradford, for Benson Oil Co., appellee.

Raymond W. Bulson, Port Allegany, for Glenn Benson, appellee.

Before CAVANAUGH, BROSKY and ROWLEY, JJ.

BROSKY, Judge.

This is an appeal from a judgment entered upon an order granting in part, and denying in part, requested post trial relief. The heart of the dispute rests in the determination of whether or not terms contained in a written confirmation of an oral contract between the parties and sent after delivery of the goods became part of the agreement under the provisions of § 2–207 of the Uniform Commercial Code. We conclude that they do and therefore, reverse that portion of the order inconsistent with this opinion.

The relevant facts, briefly stated, disclose that on February 3, 1986, discussions were had between the vice president of Otto, a Mr. Glenn Benson, and the president of Herzog regarding the delivery of certain items of drilling equipment or materials by Herzog to Otto at a drilling site where Otto was currently working with Benson Oil Company. Glenn Benson authorized the delivery of approximately 2,000 feet of pipe to be paid for by Otto. On February 6, 1986, Herzog was called by Robert Benson, brother of Glenn Benson and owner of Benson Oil, and was told to

deliver the previously discussed materials to the well site that day, which Herzog did. The delivery of the materials was accompanied by the delivery of a "pipe tally report", a sort of invoice used in the business, which stated that a finance charge of 1.5% per month of the unpaid balance would be added after 30 days. Also, on that day, a written invoice was sent listing the materials delivered, the price, the terms net 30 days and indicating that balances after 30 days would carry a 1.5% monthly finance charge and also that if an account were turned over for collection, attorney's fees in the amount of 25% of the balance due would be added. No objection to the terms of the invoice were related by Otto to Herzog.

Subsequently, Otto refused to pay on the invoice and ultimately an action was initiated by Herzog against Otto. The trial court found that a valid contractual arrangement had been entered into between Herzog and Otto and found a liability in the amount of $8,070.60, plus statutory interest from the date of the order. Upon post trial proceedings, the court added 6% interest from March 6, 1986 to the date of the order, but denied appellant's request for interest at the rate of 1.5% monthly and also denied the request for attorney's fees. This appeal followed.

The essence of the trial court's finding that the interest and attorney's fees items had not become part of the contract between the parties was the conclusion reached that such items could not become part of the contract if proffered in a post-delivery written confirmation. The court specifically found that the interest item did not constitute a material change or alteration of the contract. It appears undisputed that 13 Pa.C.S.A. § 2207 is the controlling statutory provision. This section states:

(a) General rule.—A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is ex-

pressly made conditional on assent to the additional or different terms.

(b) Effect on contract.—The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(1) the offer expressly limits acceptance to the terms of the offer;

(2) they materially alter it; or

(3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

■ There seems to be little dispute that the invoice sent by Herzog on the day of delivery is a written confirmation within the meaning of § 2–207. The question appears to be whether a confirmation sent *after delivery* of the goods falls within the scope of § 2–207. We conclude that it does.

Our first point of reference leading us to our conclusion is the language of the statute itself. The "general rule" portion of § 2207 states "a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, ..." Subsection (b) indicates that these additional terms are to be construed as proposals for addition which, between merchants, become part of the contract if they are not objected to and if they do not materially alter the agreement. No objection to the terms in question was lodged and, at least as to the interest term, the court indicated that they did not constitute a material alteration of the contract. Thus, initially it would seem that there is no requirement that the written documents be sent prior to a delivery of the goods.

Our second point of reference is the comments to § 2–207. The first comment states "[t]his section is intended to deal with two typical situations. The one is the written confirmation, where *an agreement has been reached* either orally or by informal correspondence be-

tween the parties *and is followed* by one or both of the parties sending formal memoranda embodying the terms so far as agreed upon and adding terms not discussed." (emphasis added). The second comment adds: "Under this Article a proposed deal which in commercial understanding has in fact been closed is recognized as a contract. Therefore, any additional matter contained in the confirmation or in the acceptance falls within subsection (2) and must be regarded as a proposal for an added term...." Comment three states: "[w]hether or not additional or different terms will become part of the agreement depends upon the provisions of subsection (2). If they are such as materially to alter the original bargain, they will not be included unless expressly agreed to by the other party. If, however, they are terms which would not so change the bargain they will be incorporated unless notice of objection to them has already been given or is given within a reasonable time."

Our third point of reference is the case of *United Coal v. Hawley Fuel Coal, Inc.*, 363 Pa.Super. 106, 525 A.2d 741 (1987). There, we considered a case where there was a written confirmation sent after an oral agreement for the shipment of coal had been reached. We cited White and Summers treatise on the UCC which states that prior oral agreement cases in which one or both parties follow up with a written confirmation are to be run through § 2207(b)(2), with whatever result that subsection dictates. J. White and R. Summers, *Uniform Commercial Code*, § 1–2 at 35–36 (2d ed. 1980). We then found, in that case, that the proposed term was a material alteration of the agreement and thus did not become part of the bargain.

The above material conclusively establishes that confirming memoranda of a previously reached agreement are subject to § 2–207. The only possible distinguishing feature of the present case is that the confirmation was sent after delivery, rather than before. However, from a standpoint of legal principle, this would seem to be an immaterial distinction. All of the above references indicate that the confirming memoranda can effectuate terms in the agree-

ment even when submitted after a commercially acceptable and legally binding contract has been formed. The point of importance is the recognition that a contract can be formed even if many of the particulars or specifics have not been discussed or agreed upon.

Under the Code, there are many ways in which parties can enter into a legal contractual relationship. In the present case, is it not immediately apparent when a binding contract was formed, even though it would seem beyond dispute that one was formed at sometime. Ostensibly, it could be argued that a binding agreement was formed through the telephone discussion on February 3rd. Or, possibly, through the telephone conversation of the 6th. And certainly, if not by then, upon shipment or acceptance of the goods at the drilling site. However, we can see no reason why there should be a different result if the confirmation had been sent on the 5th, pursuant to the conversation of the 3rd, as opposed to the facts as they transpired in the present case. The overriding principle regarding the sending of a written confirmation, and the effect thereof, would not be changed.

■ We have little difficulty in determining that the interest charge term is not one that materially alters the agreement. The trial court reached that conclusion, and comment 5 to § 2207 states, as an example of a term that does not materially alter the contract, "a clause providing for interest on overdue invoices ... where they are within the range of trade practice...." Furthermore, it is common in commercial circles, including transactions with nonmerchants, for balances to be subjected to interest charges. As such, and since no objection to the term was lodged, we find that the trial court erred in not allowing appellant interest as provided in the written confirmation. Under operation of § 2207 the term must be considered as part of the agreement. See, in accord, *Rangen, Inc. v. Valley Trout Farms, Inc.*, 104 Idaho 284, 658 P.2d 955 (1983).

In contrast, however, we find that the provision calling for the addition of an attorney's fee of 25% of the balance due is a material alteration and, therefore, did not become part of the agreement. We come to this conclusion for a few reasons. First, in common experience an attorney's fee provision is considerably less common than an interest rate provision; thus, it would not be as readily expected or anticipated. Secondly, when found, such clauses are usually less than 25% of the balance, often 10 or 15%, thus bringing the reasonableness of this particular clause into question. Thirdly, a lump sum addition of 25% changes the obligor's financial obligation under the contract to, what must be considered, a material degree. Fourthly, we choose to follow the precedent of *Johnson Tire Service, Inc. v. Thorn, Inc.*, 613 P.2d 521, 529 (Utah, 1980), where this conclusion was also reached. There, the Utah court disallowed a clause, purportedly added under operation of § 2–207, which called for the buyer to pay costs of collection including "reasonable attorney's fees", because it found that such a clause constituted a material alteration. Thus, we conclude that the attorney's fee provision constitutes a material alteration of the agreement under § 2–207 and that the trial court correctly refused to enforce it.

For the above reasons we reverse the order appealed from to the extent it denies appellant's request for interest at the rate specified in the invoice, in all other respects the order is affirmed.

Reversed in part, affirmed in part. Jurisdiction relinquished.