**PARKER OIL COMPANY, Appellee**

v.

**MICO PETRO AND HEATING OIL, LLC and Kamal Singh, Appellants.**

Superior Court of Pennsylvania.

Submitted June 16, 2008.

Filed June 3, 2009.

---

John Molnar, Wind Gap, for appellant.

Mary L. Parker, Stroudsburg, for appellee.

BEFORE: ORIE MELVIN, KLEIN, and FITZGERALD,* JJ.

OPINION BY KLEIN, J.:

¶ 1 Mico Petro and Heating Oil, LLC and Kamal Singh appeal from the judgment entered against them determining that Mico Petro and Singh, personally, are responsible for the failure of the corporation to meet its corporate obligations to pay for oil supplied to it pursuant to contract. The trial court determined Mico Petro and Singh owed $80,790.38 in unpaid invoices, service charges and returned check bank charges. While we agree that Mico Petro is responsible, we disagree that Singh is also liable under the participation theory. Therefore, we reverse that portion of the judgment.

report listing his business address as being from the noncontiguous county of Berks.

* Former Justice specially assigned to Superior Court.

¶ 2 Singh owned and operated a gasoline service station under the corporate name Mico Petro and Heating Oil, LLC. Mico Petro had a long term contractual relationship with Parker Oil for oil supplies. Parker alleged that from May 2002 to April 2005 it supplied gasoline to Mico Petro accruing an unpaid balance of $51,667.91 plus fees and finance charges. Following a non-jury trial, the trial court ruled in favor of Parker and against Mico Petro. The trial court also determined that Singh, personally, was liable for the unpaid balance under a participation theory. Participation is where a corporate officer is held liable for a business debt where that person participates in tortuous conduct that led to the liability. *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 470 A.2d 86 (1983). Additionally, the trial court added a finance charge of 1½ ($27,472.47) and bank fees of $30.00 per returned check ($1,650.00)[1] to the stipulated amount of unpaid invoices ($51,667.91).

¶ 3 Mico Petro and Singh now raise 6 issues on appeal.

1. Did the trial court err in finding in favor of Parker and against Mico Petro and Singh in the amount of $80,790.38?

2. Did the trial court fail to find that the business and contractual relationships were solely between Parker and Mico Petro?

3. Did the trial court err in finding that the interest due calculated to $27,472.47?

4. Did the trial court err in finding that there was a conversion by Singh?

5. Did the trial court err in finding that there was personal liability on behalf of Singh on a participation theory and a participation theory for misfeasance?

6. Did the trial court err in finding that Singh acknowledged participating in wrongful acts when he received petroleum products and failed to pay for same?

■ ¶ 4 Our standard of review for a non-jury trial is well established. "We [may] reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record. As fact finder, the judge has the authority to weight the testimony of each party's witnesses and to decide which are most credible." *Skurnowicz v. Lucci*, 798 A.2d 788, 793 (Pa.Super.2002).

¶ 5 We will address those issue that deal with the participation theory first.[2]

**Participation**

¶ 6 We begin by noting that this is not a case where the creditor has any evidence to pierce the corporate veil. It is clear that Singh was not trading individually but always traded under the corporate name. Likewise, there is no *evidence* of fraud. The complaint charged fraud, but the trial court did find for Parker on that basis. *See Shay v. Flight C Helicopter Services, Inc.*, 822 A.2d 1, 17 (Pa.Super.2003).

■ ¶ 7 Here, the trial court only found against Singh individually because it determined there was a "conversion" and Singh can be found individually liable on a "participation" theory. That means Singh participated in some kind of misfeasance. We do not believe the evidence is sufficient to establish any kind of "conversion" or other illegal act. There is no evidence that Mico Petro planned to take oil and never pay for it.

¶ 8 Rather, the evidence demonstrates that this matter represents an ongoing commercial relationship, a relationship

---

1. At $30.00 per returned check, this represents 55 returned checks.

2. Issues 2, 4, 5, and 6.

that had existed for years, where the purchaser struggled and did not make full payment for the product delivered on a number of occasions.

¶ 9 The situation may well have been different if there was one large transaction and evidence that Singh knew the corporation could not pay for it. However, that is not the situation here. First, it is undisputed that Parker knew that Singh was operating through a corporation, and in fact had dealt with him for years, always in a corporate rather than individual relationship. Second, it is undisputed that Parker knew for a long time that Mico Petro was having financial difficulty, as many checks were drawn with insufficient funds but later made good. This is evidence of a corporation struggling to make it, and a supplier going along with this. When the corporation finally goes out of business, this does not turn a long-time contractual relationship into a tort. This is a classic situation where an individual wishes to shield himself from personal liability and uses the classic corporate structure, and a supplier knows about both the corporate structure and the financial difficulties of the corporation and chooses to take the risk. The decision by the trial court in this case could drastically undermine our business structure by allowing creditors to end-run the normal burden of piercing the corporate veil under the little used "participation" theory. The only participation here was that of a corporation trying to stay afloat and a creditor going along with it in the hope that ultimately it will get paid—incidentally making a profit for a number of years along the way.

¶ 10 We also note that in the current economic situation, this is something that is likely to happen more and more. While there is certainly evidence that Mico Petro owed a great deal of money to Parker, we cannot find any evidence that Singh accepted the oil *planning* not to pay for it. There is nothing more than a showing that finally the corporation came to the conclusion that it was not profitable and had to close.

¶ 11 Simply calling a contractual dispute a tort does not make it so. Because of this lack of evidence, we do not believe it has been demonstrated that Singh was malfeasant in his actions. Without malfeasance, this is merely a breach of contract by a corporation, and the individual should not be found to be personally liable. *Shay, supra.*

¶ 12 As a result of the above, judgment shall be reversed as to Kamal Singh, personally. The judgment against Mico Petro and Heating Oil, LLC is affirmed.

**Award**

¶ 13 While the trial court erred in concluding Singh was personally responsible for the debts of the corporation, it correctly determined the amount of liability.

¶ 14 Mico Petro makes a perfunctory argument that there is no written agreement between the parties with respect to the assessment of interest in finance charges and therefore, the trial court erred in imposing those fees. While Singh may have testified that he never received monthly statements that contained any mention of finance charges, the trial court believed otherwise. Parker presented evidence that the standard invoices it provided to its customers contained a provision for 1½ finance charges on any bill more than 30 days overdue. The record demonstrates that Plaintiff's exhibits 1 and 2 are a sample invoice and a delivery ticket used by Parker. Both of these documents plainly state there will be a 1½ per month (18% annual) finance charge added after 30 days. Further, Plaintiff's exhibits 3–8 are delivery tickets for deliveries made to Mico Petro and these tickets, identical in form to the sample provided in exhibit 1,

have the finance charge notice. There is clearly no error in accepting evidence of the finance charge.

¶ 15 We further note that such language on an invoice or delivery ticket is not the type term that will materially alter an agreement and thus void a contract. *See Herzog Oil Field Serv. Inc., v. Otto Torpedo Co.,* 391 Pa.Super. 133, 570 A.2d 549, 551 (1990).

¶ 16 Finally, Mico Petro makes no argument in its brief that the trial court improperly added the returned check charges to the determination of damages. Therefore, that issue is waived. *Harris v. Toys "R" Us–Penn Inc.,* 880 A.2d 1270 (Pa.Super.2005) (failure to develop argument with citations and analysis waives issue on appeal). We note, in support of the trial court, that Singh admitted that there were 55 returned checks issued by Mico Petro. We would see no error in including these fees, incurred by Parker, in the amount of total damages.

¶ 17 Judgment affirmed in part, reversed in part. Case remanded for action consistent with this decision. Appellee's Application for Dismissal of Appeal For Failure by Appellant to Enter Judgment is denied. Judgment was entered on May 1, 2008. Jurisdiction relinquished.

¶ 18 FITZGERALD, J., files a Concurring and Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY FITZGERALD, J.:

¶ 1 Insofar as the majority reverses the portion of the judgment finding Appellant ("Singh") liable under the participation theory, I respectfully dissent. Insofar as the majority concludes that Mico Petro and Heating Oil, LLC is responsible, I concur.

¶ 2 The majority concludes that the evidence was insufficient "to establish any kind of 'conversion' or other illegal act" on Singh's part. Majority Op. at 856. I disagree. Singh testified that he was the only member of Mico Petro. *Id.* at 22. Singh is the sole shareholder of Mico Petro. Findings of Fact, Discussion, Conclusion of Law, and Verdict ("Verdict"), 7/23/07, at 1. He was responsible for paying the bills. *Id.* at 23. He testified that after the delivery of the petroleum products, the products were then sold. *Id.* at 24.

¶ 3 The trial court found, *inter alia,* "that a conversion of the petroleum products delivered to [Appellants] had taken place." Trial Ct. Op., 11/23/07, at 4. The trial court found that "the written confirmation ... embod[ied] the terms agreed upon including the imposition of finance charges on outstanding balances after 30 days." *Id.* at 6. "[Appellee] has established by a preponderance of the evidence that [Appellants] are liable to it for the tort of conversion and against Singh under the participation theory." *Id.* at 7.

¶ 4 Singh testified as follows:

Q: Mr. Singh, Mico Petro—I'm just going to refer to it as Mico Petro for this purpose—is an LLC, correct.

A: Yes.

Q: And how long has that LLC been in business?

A: It's from 2003, July of 2003.

Q: And what is the function of Mico Petro?

A: We have gas stations and a heating oil business.

Q: So the purpose of Mico Petro is to buy and sell petroleum products?

A: Yes.

Q: And you are the only member of Mico Petro, correct?

A: Yes.

Q: What are your responsibilities as the sole member?

A: Like I was managing the business.

Q: Are you responsible for the day-to-day management of the business?

A: No.

Q: You're not?

A: I had an employee that was doing day-to-day business.

Q: Who was that employee?

A: His name was Nelson.

Q: Were you responsible for writing checks?

A: Yes, I was, but he was writing all the checks.

Q: Under your direction?

A: Under my direction.

\* \* \*

Q: Paying bills. Was he responsible for paying bills?

A: No. I was responsible for paying the bills.

\* \* \*

Q: And in the past, you had contacted Parker Oil Company to order petroleum products; isn't that correct?

A: Yes.

N.T., 7/3/07, at 22–24.

¶ 5 Where the corporate officer, such as Singh, participates in the tortious conduct, he can be held liable under a participation theory. In *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 470 A.2d 86 (1983), the Pennsylvania Supreme Court explained the participation theory of individual liability:

> There is a distinction between liability for individual participation in a wrongful act and an individual's responsibility for any liability-creating act performed behind the veil of a sham corporation. Where the court pierces the corporate veil, the owner is liable because the corporation is not a *bona fide* independent entity; therefore, its acts are truly his. Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity.

*Id.* at 621, 470 A.2d at 89–90 (footnote and citation omitted). "*Wicks* expressly confirmed that Pennsylvania law recognizes the participation theory as a basis of liability." *Brindley v. Woodland Village Restaurant, Inc.*, 438 Pa.Super. 385, 652 A.2d 865, 868 (1995).

¶ 6 "To impose liability on a corporate officer pursuant to the participation theory, a plaintiff must establish that the corporate officer engaged in misfeasance, *i.e.*, 'the improper performance of an act.'" *Shay v. Flight C Helicopter Servs., Inc.*, 822 A.2d 1, 17 (Pa.Super.2003) (citation omitted). As the Pennsylvania Supreme Court stated:

> The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein.

*Wicks*, 503 Pa. at 621–22, 470 A.2d at 90; *accord Loeffler v. McShane*, 372 Pa.Super. 442, 539 A.2d 876, 878 (1988).

¶ 7 Once it is determined that Singh could be liable under a participation theory, the court must examine the record in order to determine whether it establishes that Singh participated in the tortious activity of conversion. *Wicks,* 503 Pa. at 621, 470 A.2d at 90.

> Conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification. Conversion can result only from an act intended to affect chattel. Specific intent is not required, however, but rather an intent to exercise dominion or control over the goods which is in fact inconsistent with the plaintiff's rights establishes the tort. Money may be the subject of conversion.

*Shonberger v. Oswell,* 365 Pa.Super. 481, 530 A.2d 112, 114 (1987) (citation omitted).

¶ 8 Instantly, Singh testified that he had contacted Appellee to order petroleum products and that he was responsible for paying the bills. N.T., 7/3/07, at 23–24. He ordered the petroleum and after the delivery of the petroleum, it was then sold. *Id.* at 24. Singh gave a gas attendant the authority to sign his name whenever a delivery was received. *Id.* at 25. A signature stamp, with Singh's signature, was used with his permission. *Id.* The parties stipulated that the total of the open invoices was $51,667.91, not including the bad check charges and the finance charges. *Id.* at 27–28.

¶ 9 Singh testified that the product delivered by Parker Oil was sold and that the LLC used the proceeds of the sale. *Id.* at 24. He admitted that he was the sole member of the LLC and the only person who made decisions for the LLC. *Id.* at 23. He testified that he was responsible for paying the bills. *Id.* Singh concedes that the products were received and resold and that there is principal due for the products. *Id.* at 24, 27. Accordingly, I agree with the trial court that Appellants were liable to Parker Oil for the tort of conversion and against Singh under the participation theory. *See Wicks, supra; Shonberger, supra.*

¶ 10 Furthermore, the trial court found that Singh was liable for the finance and bad check charges. I agree. The trial court rejected Appellants' argument that Parker Oil was attempting to impose finance charges in the absence of a written agreement. The court found 13 Pa.C.S. § 2207 to be dispositive of the issue. Trial Ct. Op., 11/13/07, at 5. Section 2207 provides as follows:

> **(a) General rule.**—A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> **(b) Effect on contract.**—The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
> > (1) the offer expressly limits acceptance to the terms of the offer;
> >
> > (2) they materially alter it; or
> >
> > (3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

13 Pa.C.S. § 2207.

¶ 11 Petro and Singh contend that the trial court erred in calculating interest on the unpaid balance in the amount of 1 ½%. They aver that since there was no written agreement for the imposition of the finance charge, one cannot be imposed.

¶ 12 At the time of trial, Parker Oil testified as follows:

Q: When you deliver oil or any type of product to a customer, are they provided with anything?

A: At the point of delivery, they're provided with a delivery invoice that they sign for showing the gallons and the product, and then on a monthly basis they receive a statement from our office.

\* \* \*

Q: I'm going to show you what has been marked as Plaintiff's Exhibits 1 and 2. Could you identify those, please?

A: Yes. Plaintiff's Exhibit 1 is the delivery invoice that's provided at the point of delivery. Exhibit 2 is the monthly statement that is mailed to the customer showing the outstanding invoices and any other charges that have incurred.

Q: Okay. And these invoice slips are given to the customer each and every time the delivery is made?

A: Yes, they are.

\* \* \*

Q: And when this slip is given, a copy of this is given to your client, correct?

A: Yes. A copy is given, and a copy is brought back to our office.

Q: What happens when the copy is brought back to the office?

A: When the copy comes back to our office, it's entered into our system, our computer, which then puts it on that account.

Q: So each client has their own separate account with a system on the computer?

A: That is correct.

Q: Okay. And you've testified that Plaintiff's Exhibit # 2 is the statement that is then subsequently sent out to the client?

A: That's the monthly statement that is mailed to the customer.

\* \* \*

Q: Okay. And does Parker Oil impose any type of penalty for late or nonpayments?

A: After 30 days on an outstanding balance is assessed a 1 and ½ *percent per month service charge.*

Q: And is the customer made aware of this penalty?

A: The delivery invoice that he receives and signs for at the time of delivery states it. It's specifically stated on the bottom of that invoice. It is also on the monthly statement that he's mailed.

Q: So the terms of penalty are listed on the slip that is signed by your customer?

A: That is correct.

N.T., 7/3/07, at 7–10.

¶ 13 The trial court found this evidence credible. The invoices and the monthly statements clearly indicate a finance charge of 1½% for late payment. Furthermore, this Court opined in *Herzog Oil Field Serv., Inc. v. Otto Torpedo Co.,* 391 Pa.Super. 133, 570 A.2d 549 (1990):

We have little difficulty in determining that the interest charge term is not one that materially alters the agreement. The trial court reached that conclusion, and comment 5 to § 2207 states, as an example of a term that does not materially alter the contract, "a clause providing for interest on overdue invoices ... where they are within the range of trade practice...." Furthermore, it is common in commercial circles, including transactions with non-merchants, for balances to be subjected to interest charges. As such, and since no objec-

tion to the term was lodged, we find that the trial court erred in not allowing appellant interest as provided in the written confirmation. Under operation of § 2207 the term must be considered as part of the agreement.

*Id.* at 551 (citation omitted).

¶ 14 Singh admitted that there were approximately fifty-five checks that were returned for insufficient funds. N.T., 7/3/07, at 25. Therefore, the trial court did not err in finding that Appellants were liable to Parker Oil for the costs of the returned check fees in the amount of $1,650.00. *See* Verdict, 7/23/07, at 2.

¶ 15 I discern no error in the trial court's conclusion that the evidence of record established that there was a conversion by Singh and that he was personally liable based upon a participation theory. *See Wicks, supra; Shonberger, supra.* I would therefore affirm the order of the trial court. *See Skurnowicz, supra.*