**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

Nos. 13-4326 and 13-4426

————————

FOOD TEAM INTERNATIONAL, LTD.

v.

UNILINK, LLC; GARY GREGORY;
AKBAR BOUTARABI; MIKE MOORE;
PENNSYLVANIA FOOD GROUP, LLC; MARC BEHAEGEL

Unilink LLC, Akbar Boutarabi, Gary Gregory, Marc Behaegel,
Appellants in case no. 13-4326

Food Team International, Ltd.,
Appellant in case no. 13-4426

————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.: 5:10-cv-3584)
District Judge: Honorable James Knoll Gardner

————————

Argued on November 20, 2014

Before: MCKEE, Chief Judge, RENDELL and SLOVITER, <u>Circuit Judges</u>

(Opinion filed: December 17, 2014)

Michael J. Keaton, Esquire **(Argued)**
Keaton Law Firm, P.C.
707 Lake Cook Road, Suite 300
Deerfield, IL 60015

Leslie Beth Baskin, Esquire
Spector, Gadon & Rosen, P.C.

1635 Market Street, 7th Floor
Philadelphia, PA 19103

Counsel for Appellee/Cross-Appellant

Mark C. H. Mandell, Esquire **(Argued)**
42 Herman Thau Road
Annadale, NJ 08801

Counsel for Appellants/Cross-Appellees

O P I N I O N[*]

**RENDELL**, Circuit Judge:

Unilink LLC ("Unilink") and three of its officers, Gary Gregory, Marc Behaegel, and Akbar Boutarabi ("Defendant-Officers"; together, "Defendants") appeal the District Court's summary judgment order and its judgment after a bench trial. Unilink and Defendant-Officers challenge the District Court's finding that they are liable to Food Team International Ltd ("Food Team") under the Perishable Agricultural Commodities Act ("PACA"). Food Team cross-appeals, seeking sanctions and attorneys' fees. We will reverse the District Court's judgment against Defendant-Officers, remand for further consideration of sanctions, and affirm in all other respects.

## I. BACKGROUND

Unilink and Food Team entered into installment contracts for Unilink to buy vegetables from Food Team. Subsequently, Unilink unilaterally canceled the contracts

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

and refused to pay the full amount owed, because Food Team's vegetables were supposedly contaminated. On July 21, 2010, Food Team filed a complaint against Defendants for the amounts due. Unilink then sold all its assets to a third party and transferred the proceeds to Pennsylvania Food Group LLC ("PFG"), Unilink's parent. On summary judgment, the District Court held Unilink and Defendant-Officers jointly and severally liable for certain vegetable shipments, and Unilink separately liable for other shipments. After a bench trial, the District Court held Unilink liable for additional shipments and found that the vegetables were not contaminated. The District Court did not consider the imposition of sanctions under Rule 26 for Defendants' failure to notify Food Team that there was insurance coverages for the losses, but it did consider—and disallow—Food Team's request for attorneys' fees.

## II. DISCUSSION

A. Unilink's Liability

PACA provides that it shall be unlawful, inter alia, "[f]or any commission merchant, dealer, or broker . . . to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had." 7 U.S.C. § 499b(4). Unilink is liable under § 499b(4) for failure to "make full payment promptly." *Id.* The District Court properly considered whether Unilink had paid Food Team in accordance with the contracts for the

3

shipments it had accepted. Because Unilink did not do so, Unilink is liable under PACA for its breach of contract, and the District Court's ruling to this effect was appropriate.[1]

B. Defendant-Officers' Liability

PACA also allows for a non-segregated trust for the protection of producers and growers. *Id.* § 499e(c)(2). If an unpaid supplier, seller, or agent gives written notice of its intent to preserve the benefits of the trust, *id.* § 499e(c)(3), then the commission merchant, dealer, or broker shall hold any perishable agricultural commodities received, or proceeds resulting therefrom, "in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents," *id.* § 499e(c)(2).

"[O]fficers and shareholders, in certain circumstances, may be held individually liable for breaching their fiduciary duties under [the PACA trust]." *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 421 (3d Cir. 2005). "Individual liability in the PACA context is not derived from the statutory language, but from common law breach of trust principles." *Id.* In assessing individual liability, a court must (1) "determine whether an individual holds a position that suggests a possible fiduciary duty to preserve the PACA trust assets (*e.g.,* officer, director, and/or controlling shareholder)"; and (2) "assess whether that individual's involvement with the corporation establishes that she was *actually* able to control the PACA trust assets at issue." *Bear Mountain Orchards, Inc. v.*

---

[1] To the extent that Defendants challenge the calculation of Unilink's damages, Unilink has failed to show that the District Court's calculation was "clearly erroneous." *Lerman v. Joyce Int'l, Inc.*, 10 F.3d 106, 113 (3d Cir. 1993).

4

*Mich-Kim, Inc.*, 623 F.3d 163, 172 (3d Cir. 2010). In addition, an individual is not liable unless the "'*individual* . . . does not preserve [the trust assets] for the beneficiaries.'" *Weis-Buy*, 411 F.3d at 421 (emphasis added) (quoting *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993)).

Here, all Defendant-Officers held positions suggesting a possible fiduciary duty to preserve the PACA trust assets. Gregory was Unilink's president; Behaegel was a vice president; and Boutarabi was the plant manager/supervisor. They were three of the seven stockholders of Unilink's parent, PFG.

However, Food Team did not meet its burden to show that Defendant-Officers were actually able to control the PACA trust assets. The District Court concluded that they had control based on Unilink's admission that Defendant-Officers "were, during the time of the transactions in issue, officers and persons with discretionary control of Unilink." (App. 45, 216.) But having discretionary control of Unilink is not synonymous with being *actually* able to control the *PACA trust assets*, especially considering that, as the District Court found, "nothing of record establishes the involvement of Mr. Behaegal [*sic*], [or] Mr. Boutarabi . . . in the operations of Unilink or how they were able to actually exercise control of the PACA trust assets at issue in this matter."[2] (*Id.* at 44 n.36.)

Food Team has also failed to show that, individually, Defendant-Officers did anything resulting in the trust assets not being preserved. Granted, when Unilink sold its

---

[2] The District Court distinguished the record evidence for Gregory because Gregory had admitted that "he negotiated the contracts at issue." (App. 44.) But Gregory's contract negotiations do not show that he was actually able to control the *PACA trust assets*.

assets, PACA required Unilink to retain, until the resolution of the dispute, enough of the sale proceeds to cover Food Team's PACA trust claims, instead of disbursing the entire amount to PFG (as Unilink did). However, there is no evidence of *Defendant-Officers'* role in the decision to disburse the proceeds. Without some evidence of what role Defendant-Officers played, they cannot be held liable.[3] Accordingly, we will reverse the District Court's ruling imposing liability on Defendant-Officers.

C. Attorneys' Fees Provision

The parties dispute whether Food Team's attorneys' fees provision was incorporated into the parties' contracts. This provision appeared only in the last two of Food Team's thirty invoices to Unilink, and those two invoices were sent after the parties' relationship had soured. On summary judgment, the District Court determined that the provision did not become part of the contracts.

Under Pennsylvania law, additional terms become part of a contract between merchants unless: "(1) the offer expressly limits acceptance to the terms of the offer; (2) they materially alter it; or (3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received." 13 Pa. Cons. Stat. § 2207(b). The parties dispute only whether the provision "materially alters" the contracts. "A material alteration is one that would 'result in surprise or hardship if incorporated without express awareness by the other party.'" *Standard Bent Glass Corp.*

_____

[3]Given that Defendant-Officers are not liable, we need not discuss whether the District Court should have applied certain offsets to their liability.

6

*v. Glassrobots Oy*, 333 F.3d 440, 448 n.12 (3d Cir. 2003) (quoting *Aceros Prefabricados, S.A. v. Tradearbed, Inc.*, 282 F.3d 92, 100 (2d Cir. 2002)).

Pennsylvania law generally treats attorneys' fees provisions as materially altering a contract. *See Herzog Oil Field Serv., Inc. v. Otto Torpedo Co.*, 570 A.2d 549, 551-52 (Pa. Super. Ct. 1990). Although *Herzog* was not decided on summary judgment, *id.* at 549, "summary judgment may be appropriate when the parties cannot honestly dispute that a term would result in surprise or undue hardship," *Trans-Aire Int'l, Inc. v. N. Adhesive Co.*, 882 F.2d 1254, 1261 (7th Cir. 1989). Even if an attorneys' fees provision is sometimes "standard practice" in the industry, it was not standard practice here, as Food Team's first twenty-eight invoices did not contain such a provision. Moreover, here the attorneys' fees provision is overly broad and therefore particularly surprising: it applies to "'all attorneys' fees' in connection with collection of past due invoices," not just reasonable fees and not just the fees relating to the two invoices containing the provision. (App. 38.) Accordingly, Food Team has failed to establish that the attorneys' fees provision became part of the contracts, and we will affirm this aspect of the District Court's ruling.[4]

D. Rule 26 Sanctions

The parties dispute whether the District Court should have sanctioned Defendants and their counsel for their failure to disclose Unilink's insurance policy. Rule 26(a)

---

[4] Food Team argues that Gregory conceded that the attorneys' fees provision was not surprising, but there is no evidence of this concession in the record. At summary judgment, the District Court noted that Food Team had failed to offer any evidence that Gregory made this concession, and this problem persists on appeal.

provides that, except in certain situations that do not apply here, "a party must . . . provide to the other parties: . . . any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv). Defendants urge that Food Team waived this issue by not raising it in the District Court and that Food Team loses on the merits.

Rule 26(g) provides that, in the event of a Rule 26 violation, "the court, on motion *or on its own, must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3) (emphasis added). This mandatory language means "[t]here is no requirement that the [parties] have asked for the imposition of sanctions," as district courts have the "duty . . . to determine whether to impose sanctions even if the [parties] had not invited [their] attention to the issue." *City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 711 F.3d 754, 761 (7th Cir. 2013) (interpreting 15 U.S.C. § 78u-4(c), which also gives district courts an obligation to impose sanctions regardless of whether the parties raise the issue). The District Court's "failure to do so made the final judgment—an appealable order, of course—vulnerable to challenge." *Id.* at 761-62. Thus, the District Court had an independent duty to consider sanctions, and Food Team's failure to request sanctions did not result in waiver.

As for the merits, Defendants should have disclosed the insurance policy. Unilink's insurance company, Philadelphia Indemnity Insurance Company ("PIIC"), notified Unilink that it would provide coverage for the litigation. PIIC acknowledged that it "shall pay on behalf of the Individual Insured . . . for D&O Wrongful Acts, except

8

to the extent the Private Company has indemnified the Individual Insured." (Defs. Opp. to Mot. To File Suppl. App., Ex. B, at 2.) "D&O Wrongful Acts" include claims for "breach of duty." (*Id.* at 3.) Count Six of Food Team's complaint asserted that Defendant-Officers breached their fiduciary duties, making this policy directly relevant. Thus, this policy should have been disclosed.[5] However, we offer no opinion as to whether Defendants' failure to disclose the insurance policy was done without substantial justification, and we will remand for further consideration. *See Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 140 (3d Cir. 2009).[6]

### III. CONCLUSION

We will reverse the judgment against Defendant-Officers, affirm the judgment against Unilink and the District Court's ruling denying attorneys' fees, and remand for consideration of Rule 26 sanctions.

---

[5]Further, the insurance policy covers "claims first *made* during the policy period," and does not require claims to have *accrued* during the policy period. (Defs. Opp. to Mot. To File Suppl. App., Ex. B, at 2 (emphasis added).)

[6] Given that Food Team has shown that remand is appropriate, we will deny Defendants' motion for appellate sanctions for Food Team's decision to appeal this issue.