J-A11013-25 & J-A11014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| GERALD R. BODMAN, PE, T/A AGRICULTURAL SYSTEMS ENGINEERING | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HAROLD MENDELSON AND MILDRED MENDELSON, HUSBAND AND WIFE | : | No. 622 MDA 2024 |
| | : | |
| Appellants | : | |

Appeal from the Judgment Entered July 11, 2024
In the Court of Common Pleas of Columbia County Civil Division at
No(s): 2017-CV-0000250-CV

| | | |
|---|---|---|
| HAROLD MENDELSON AND MILDRED MENDELSON, HUSBAND AND WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| GERALD R. BODMAN, PE, T/A AGRICULTURAL SYSTEMS ENGINEERING | : | No. 623 MDA 2024 |

Appeal from the Judgment Entered July 11, 2024
In the Court of Common Pleas of Columbia County Civil Division at
No(s): 2018-CV-0000964-CV

BEFORE:   MURRAY, J., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                    **FILED MAY 13, 2025**

---

* Former Justice specially assigned to the Superior Court.

In these consolidated appeals, Harold Mendelson (Mendelson) and Mildred Mendelson (Ms. Mendelson), husband and wife (collectively, Appellants), appeal from the judgments entered against them, and in favor of Gerald R. Bodman, PE, T/A Agricultural Systems Engineering (Bodman). Appellants challenge the trial court's calculation and award of contractual interest to Bodman. After careful consideration, we affirm.

The trial court described the underlying dispute between the parties:

At the outset, this is a contract case/dispute. … [Appellants] were sued by [Bodman] for unpaid invoices regarding professional services rendered to [Appellants]. Subsequently, [Appellants] sued Bodman in a separate civil action regarding essentially the same matter. Bodman believed that he was owed a balance for the services rendered; [Appellants] sought recovery of what they believed were overpayments to Bodman.

[Appellants were] familiar with Bodman based upon previously engaging his services (**See** [N.T., 11/9/23, at] 33), and through Bodman, [Appellants] retained the legal services of Attorney Barry Hammerback [(Hammerback)]. … Hammerback undertook representation of [Appellants] in what was referred to as a "stray voltage" case, litigated in the State of New York. Hammerback was retained to prepare and present a lawsuit [for Appellants]. As part of his handling of the case, [Appellants] engaged the services of [Bodman] to review and analyze depositions and data from prior matters in order to provide "opinions" regarding "certain areas involving [Appellants'] lawsuit." (**See** [**id.** at] 115-116.)

The above-referenced information to be reviewed was forwarded by Hammerback's investigator and case manager, with Hammerback's approval, to Bodman. (**See** [**id.** at] 117-118). Hammerback's office experienced some difficulties in forwarding the information to Bodman by email, and enlisted the help of [Ms. Mendelson] by first forwarding the emails to her that contained the depositions and data, and then asking her to forward the same to Bodman. [Ms. Mendelson] later challenged her forwarding of the transcripts to Bodman as it was her determination that not all depositions should have been forwarded to Bodman ….

> **Ultimately, [the amount due for] all work done by Bodman regarding [Appellants'] stray voltage case was not, Bodman alleged, paid in full. [In the instant cases,] Bodman sued [Appellants] for non-payment of his services and, subsequently, [Appellants] separately sued Bodman claiming [Bodman] did unnecessary and unauthorized work**….

Trial Court Opinion, 6/25/24, at 2-3 (emphasis added; punctuation modified; citations in original).

On May 7, 2020, the trial court entered an order consolidating the two cases for trial. Trial Court Order, 5/7/20. The matter proceeded to a jury trial on November 9, 2023. The jury ultimately entered verdicts in Bodman's favor in both cases, and awarded Bodman damages of $28,752.97.

On November 13, 2023, Appellants timely filed post-trial motions. Separately, on November 17, 2023, the trial court entered an order scheduling a hearing "to determine interest on damages awarded at jury trial" for December 1, 2023. Trial Court Order, 11/17/23 (capitalization modified). On December 4, 2023, the trial court entered a new scheduling order for the hearing "to determine interest on damages awarded at jury trial on November 9, 2023, and hearing on [Appellants'] Motion for Post-Trial Relief[.]" Trial Court Order, 12/4/23, at 1-2 (unpaginated) (capitalization modified).

The trial court conducted a post-trial motions/interest hearing on February 28, 2024. On April 3, 2024, the trial court denied Appellants' post-trial motions. Trial Court Order, 4/3/24, ¶ 1. Relevant to this appeal, the trial

court further determined that Bodman's billing rate, as stated in Bodman's invoices,

> included late payment fees of 1.5% per month, a rebilling rate of $10.00, and interest calculated upon the entire balance (compounded rate) that, added to the Jury Verdict, results in the sum total of $129,739.00 ($28,752.97 + $100,986.43).

*Id.* ¶ 2 (punctuation modified). Appellants timely appealed.[1] Appellants and the trial court have complied with Pa.R.A.P. 1925.

Appellants present the following issue for our review:

> Did the [trial] court err in the amount of interest and costs calculated post-trial, by substantially exceeding the lawfully permitted imposition of statutory interest, when no motion for post-trial relief was filed to preserve the issue of contractual interest?

Appellants' Brief at 3.[2]

Appellants challenge the trial court's award of interest at a contractual rate, "instead of the much lower statutory rate[.]" Appellants' Brief at 7. Appellants argue the "factual circumstances justifying the higher rate were not put to the jury, were not asserted in a motion for post-trial relief, and

---

[1] Appellants prematurely appealed the trial court's order determining interest and denying their post-trial motions. After this Court's issuance of a rule to show cause, and the subsequent praecipe by Appellants, the trial court entered judgment on July 11, 2024. The appeal is timely and properly before us. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof").

[2] Based upon the entry of judgment by the trial court, Appellants abandoned their issue challenging this Court's jurisdiction. *See* Appellants' Brief at 3.

were therefore waived." *Id.* Appellants acknowledge the trial court has the authority to mold a verdict to include prejudgment interest <u>at the statutory rate</u>. *Id.* However, Appellants argue, the trial court inappropriately awarded post-trial contractual interest. *Id.* at 8. According to Appellants,

> it was inappropriate for the [trial] court to apply the 1.5% per month (19.6% APR) compounding rate, and $10.00 monthly rebilling fee, because the applicability of that rate is predicated on a separate factual determination than that which was presented to the jury for its determination, and which was waived by the failure of Bodman to file a motion for post-trial relief. Instead, the [trial] court should have calculated the statutory interest rate of 6% *per annum* pursuant to 41 P[.S.] § 202, which would have been within the scope of its authority.

*Id.*

Appellants acknowledge to stipulating, before trial, that the calculation of interest "would be a legal issue to be determined, if applicable, after the jury returned its verdict." *Id.* Appellants nevertheless contest the trial court's award of contractual, rather than statutory interest. *Id.* at 9. Appellants claim the factual determination of "contractual" interest should have been placed before the jury. *Id.* Appellants argue

> the jury did not consider the separate factual and legal questions that would determine whether [Appellants] had acquiesced to the finance and rebilling charges that resulted in an interest judgment more than three times higher than the actual billings considered by the jury….

*Id.* According to Appellants, although statutory interest is easily determined through a calculation, contractual interest requires the presentation of

evidence and a determination of whether Appellants accepted the terms presented on the invoices. *Id.* at 10-11.

Bodman disagrees, arguing that Appellants waived any challenge to the trial court's authority to determine the appropriate interest rate. Appellee's Brief at 9. Bodman asserts that Appellants filed a motion *in limine* seeking to remove this issue from the jury's determination. *Id.* Bodman asserts that prior to trial, Appellants orally agreed to remove this issue from the jury and consented to the trial court determining the appropriate interest rate. *Id.*

Bodman further argues that Appellants waived their claim by not objecting to application of the contractual interest rate at the post-trial hearing. *Id.* According to Bodman,

> the objection cited by [Appellants] … concerns [their] objection to [] Bodman's failure to file a written post-trial motion. Appellants' [Brief at] 12 (citing R. 414-[417a], 427a). There is no reference to statutory versus contractual interest in pages R. 414a-[4]17a or page 427a of the Reproduced Record.

*Id.* at 10. According to Bodman, Appellants' counsel challenged only Bodman's failure to *preserve* the issue by filing a written motion questioning the applicable interest rate. *Id.* Bodman contends it was unnecessary for him to file a post-trial motion in light of Appellants' motion *in limine* and oral stipulation before trial. *Id.* at 11.

Initially, we address whether Appellants waived their challenge to the procedure whereby the trial court, rather than a jury, calculated and awarded interest on the damages award. Our review discloses that this issue first came

to the trial court's attention through Appellants' October 30, 2023, motion *in limine*. In their motion, Appellants averred there was no agreement between the parties regarding the payment of interest. Motion *In Limine*, 10/30/23, ¶¶ 1-3. Based on the lack of an express agreement, Appellants requested the preclusion at trial of evidence related to interest owed by Appellants. *Id.* ¶ 6. Appellants alternatively claimed "the collection of interest is a legal matter for the [c]ourt" and requested that "Bodman be precluded from presenting evidence of interest accrued to the jury." *Id.* ¶ 7.

It appears from the certified record that the trial court scheduled a hearing on Appellants' motion *in limine* for November 3, 2023. Trial Court Order, 11/1/23. Although Appellants, after trial, requested transcription of the hearing, the trial court was unable to locate the transcript. As the trial court later explained,

> [Appellants' counsel], on March 3, 2024, requested a copy of the hearing transcript … regarding [Appellants'] Motion *in Limine* to Preclude Recovery for Interest. This is part of the Prothonotary Docket for these two cases. As of the date of the preparation of this opinion, said transcript has not been located, and it is believed that the hearing was "recorded" by an individual who is no longer employed by Columbia County and the whereabouts of said recording are unknown.

Trial Court Opinion, 6/25/24, at 10 (punctuation modified).[3]

---

[3] Our review discloses Appellants have not submitted a statement in lieu of transcript, as permitted by the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P. 1923 (providing that "if a transcript is unavailable, the
*(Footnote Continued Next Page)*

At trial, following the close of evidence, the parties discussed with the trial court which exhibits would be available to the jury during deliberations. N.T., 11/9/23, at 171. Consistent with the pre-trial stipulation, Appellants' counsel recommended that a certain exhibit not be available to the jury, as "it has interest on it[.]" *Id.*

Following trial, on November 17, 2023, the trial court entered an order scheduling a hearing "to determine interest on damages awarded at Jury Trial" for December 1, 2023. Trial Court Order, 11/17/23. On December 4, 2023, the trial court rescheduled the hearing "to determine interest on damages awarded at jury trial on November 9, 2023[.]" Trial Court Order, 12/4/23, at 1-2 (unpaginated) (capitalization modified).

At the February 28, 2024, hearing, Appellants argued that Bodman waived his claim for interest by not filing a post-trial motion. N.T., 2/28/24, at 5. Counsel for Bodman disagreed, and argued to the trial court,

> I asked [the court] specifically when the jury came back, or as the jury was [out of the courtroom] when we were all here, if [the court] wanted to do the interest as soon as that was done, if we would do the hearing on the interest, and [the trial court] indicated that [the court] would set it up for a later date….

*Id.*

---

appellant[s] may prepare a statement of the evidence or proceedings from the best available means, including [their] recollection.").

In its opinion, the trial court agreed that Bodman was not required to file a post-trial motion to preserve his claim for interest:

> At the conclusion of the trial, counsel for Bodman questioned the court regarding *the calculation of interest* on the judgment. The court responded that the matter would be handled at a later hearing. (**See** [N.T., 2/28/24, at] 5-6). There was no requirement that a motion be filed. In fact, the court's post-trial scheduling order of November 17, 2023, specifically listed the issue of interest on Bodman's award. The first objection noted by [Appellants'] counsel to the court molding the jury award to include interest and costs was at the time of the post-trial hearing….

Trial Court Opinion, 6/25/24, at 10 (capitalization modified; emphasis added).

Based upon our review of the record, we conclude Appellants waived their challenge to the procedure by which the trial court, rather than the jury, determined the interest owed on the damages award. Appellants agreed to a post-trial determination of interest.

We next address whether the trial court improperly awarded contractual interest, rather than prejudgment interest at the statutory rate. "Our review of an award of pre-judgment interest is for abuse of discretion." *Cresci Constr. Servs. v. Martin*, 64 A.3d 254, 258 (Pa. Super. 2013).

> As the United States District Court for the Eastern District of Pennsylvania concisely elaborated, "[a] court has discretion to award or not award prejudgment interest on some claims, but must or must not award prejudgment interest on others." *Fidelity Bank v. Com. Marine and Gen. Assurance Co.,* 592 F. Supp. 513, 522 (E.D. Pa. 1984) (citations omitted).

*Cresci Constr.*, 64 A.3d at 258.

Our Supreme Court has explained that

- 9 -

there is a distinction between "contractual interest" and "prejudgment interest."[FN]  Where a contract provides for the payment of money and one party breaches the contract by failing to pay, the nonbreaching party may recover interest on the amount owed under the contract in one of two ways.

---

[FN] *See*, *e.g.*, 25 C.J.S. Damages § 83 ("There is a distinction between interest awarded by virtue of the terms of a contract and interest awarded by way of damages for breach of the contract, although the recovery in both cases is frequently spoken of as a recovery of interest.").

---

First, "[i]nterest may be reserved by the terms of the contract between the parties and is then called *conventional* or *contractual interest*."  *See* 25 Williston on Contracts § 66:109 (4th ed.) (emphasis added).

Alternatively, where the parties to a contract have not specifically addressed the payment of interest in the terms of the contract, the nonbreaching party may recover, as damages, interest on the amount due under the contract.  *See id.* (citing Restatement (Second) of Contracts § 354).  This Court has referred to interest awarded as damages in such circumstances as *prejudgment interest*.  *See Fernandez v. Levin*, … 548 A.2d 1191, 1193 ([Pa.] 1988).

*TruServ Corp. v. Morgan's Tool & Supply Co.*, 39 A.3d 253, 260-61 (Pa. 2012) (footnote and emphasis in original).[4]

Thus, the amount of interest may be determined in one of two ways: (1) under the terms of the contract; or (2) at the interest rate provided by law, *i.e.*, prejudgment interest.  *Id.* at 260-61.  Under Pennsylvania law, the prejudgment interest rate is 6 percent *per annum*.  41 P.S. § 202.  If the

---

[4] Appellants in this case refer to prejudgment interest as "statutory" interest.

interest rate provided by the contract is greater than the statutory interest rate, then the rate provided by the contract prevails. *TruServ Corp.*, 39 A.3d at 263.

Where entitlement to interest is provided by contract, the award of contractual interest is not discretionary:

> In cases where the contract expressly provides for the payment of interest, or the payment of interest is implied by the nature of the promise, the interest is said to become an integral part of the debt itself, and, therefore, is recoverable as of right under the terms of the contract. *See*, *e.g.*, Restatement (Second) of Contracts § 354 cmt. a; *Somerset* [*Cmty. Hosp. v. Mitchell*,] 685 A.2d [141,] 148 [(Pa. Super. 1996)] ("[i]f the parties have agreed on the *payment of interest*, it is payable not as damages but pursuant to a contract duty that is enforceable") (emphasis [in] original); *Philadelphia Housing Auth. v. Cedarcrestone, Inc.*, 562 F. Supp. 2d 653, 658-59 (E.D. Pa. 2008) (noting that, under Pennsylvania law, where parties to a contract agree on the payment of interest, such interest is payable not as damages, but pursuant to a contract duty that is enforceable as is any other such duty, subject to legal restrictions on the rate of interest) (citing *Somerset*).
>
>   Moreover, it is a well-established principle of contract law that, where the language of a contract is clear and unambiguous, a trial court is required to give effect to that language. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, … 735 A.2d 100, 106 ([Pa.] 1999). Indeed, [the Supreme] Court has cautioned that it is not the function of a court to rewrite agreements between parties, and a court must give effect to the clear terms to which the parties have agreed. *Amoco Oil Co. v. Snyder*, … 478 A.2d 795 ([Pa.] 1984). Thus, … where the terms of a contract provide for the payment of interest, a court's award of such interest in favor of the prevailing party is **not discretionary**….

*TruServ Corp.*, 39 A.3d at 261 (emphasis added).

Instantly, at the post-trial hearing, Bodman sought to demonstrate a contractual right to interest through invoices for his services. At the post-trial

- 11 -

hearing, Bodman identified, as Exhibit 4, a February 1, 2011, invoice that he had sent to Appellants. N.T., 2/28/24, at 19-20. According to Bodman,

> I looked at my time [] log of the time I had spent … doing the particular work that's listed on the invoice, totaled it[,] and used the hourly rate and c[a]me up with a number, plus any expenses that were incurred during the time period.

*Id.* The next paragraph of the invoice, Bodman testified, included the following notice:

> All invoices are due and payable upon receipt. Prompt payment is requested and will be appreciated. **Accounts not paid within 30 days are subject to a 1.5% per month (19.6 APR) late payment fee plus a bookkeeping rebilling fee.**

*Id.* (emphasis added; quotation marks omitted).

Bodman next identified Exhibit 5, an invoice dated March 17, 2011, that he sent to Appellants. *Id.* at 20-21. In this invoice, Bodman advised Appellants "that their account was past due and it had not been paid within the 30 days and I gave a status report of the account." *Id.* at 20. Bodman confirmed that this invoice included a late payment fee, a bookkeeping fee, and a rebilling fee. *Id.* at 20-21. This invoice again included the above-described notice regarding the late payment fees. *Id.* at 21. According to Bodman, Appellants responded to this invoice by tendering a check that included the overdue payment **and late fees**. *Id.* However, Appellants advised Bodman that they had previously sent a check. *Id.* Although Appellants did not challenge the assessment of late fees, Bodman testified that he "felt out of good faith that it was appropriate …, taking [Appellants] at

- 12 -

their word, which in the past had always been good, to refund the late payment fee and the rebilling fee." *Id.*

Bodman testified that his January 1, 2015, invoice to Appellants billed them $47,367.31. *Id.* As of that date, Appellants had timely paid their invoices. *Id.* at 23. However, in an envelope postmarked January 31, 2015, Appellants paid Bodman only $15,000 of what was owed. *Id.* In that same envelope, Appellants included a note that stated, "Thanks, [Bodman]. This is just on account," which was signed by Appellants. *Id.* at 24.

Bodman testified regarding his May 3, 2015, invoice to Appellants. *Id.* In that invoice, Bodman included a note indicating that, "due to the size of the January 1st, 2015 invoice, I was going to waive the late payment fee and bookkeeping fee until June 1st of 2015." *Id.* That invoice indicated that Appellants tendered payments in February and March 2015, totaling $25,000. *Id.* Thereafter, Bodman continued to perform work for Appellants. *Id.* This work

> included two depositions, consultation with counsel, submission of requested information and documents, discussion with another engineer that [Appellants] had retained, … review of project documents, etc.

*Id.* at 25.

Bodman next identified an invoice dated December 14, 2016. *Id.* According to Bodman, this invoice

> was a correction of a previous statement where I acknowledged that I had made an error in picking [] the wrong number when listing the balance.

- 13 -

*Id.* at 26. This invoice included a late payment fee. *Id.* Bodman also explained to the trial court how he calculated late payment fees. *Id.* at 26-27. Bodman acknowledged that interest is compounded on each invoice. *Id.* at 27.

Bodman identified additional invoices, as well as a month-by-month calculation of the late payment fees owed based on a 1.5% compounded interest rate. *Id.* at 30-31. Bodman confirmed that he continued to work for Appellants after they had failed to pay their September 4, 2015, invoice. *Id.* at 33. Bodman testified that in November 2015, he was asked to testify at Appellants' stray voltage trial. *Id.* at 33-34. However, that trial never took place. *Id.* at 34. Bodman sent additional invoices to Appellants on November 8, 2015, and October 3, 2016. *Id.* at 33. Bodman testified that, as of the day of trial, Appellants owed $100,986.43 in late fees. *Id.* at 31.

In calculating contractual interest, the trial court considered the following evidence:

> The hearing conducted on February 28, 2024, specifically centered on Bodman's calculation of interest. Beginning on page 18, Bodman testified regarding … [Appellants'] Exhibit Number 4, with regard to his interest calculation on the invoices that were sent to [Appellants]. Bodman included the following on his invoices sent to [Appellants]:
>
> > "All invoices are due and payable upon receipt. Prompt payment is requested and will be appreciated. Accounts not paid within 10 days are subject to 1.5% per month (19.6% APR) late payment fee plus a bookkeeping rebilling fee." (*See* [N.T., 2/28/24, at] 20.)

Over the next approximately 20 pages[,] Bodman testified that he sent multiple invoices to [Appellants] containing the above wording. Bodman also made corrections and issued credits as needed. **Bodman's invoices were paid, *including interest*, and the balance was never challenged by [Appellants] until Bodman filed an action to collect the unpaid invoices.** (*See* [*id.* at] 32).

**Note that [Ms.] Mendelson did not appear at the [February 28, 2024,] hearing to challenge the interest charges or the calculation.**

….

… In ***Parker Oil Co. v. Mico Petro & Heating Oil, LLC***, 979 A.2d 854 ([Pa. Super.] 2009), the [Pennsylvania Superior] Court was faced with a similar issue as to whether a monthly statement sent to a customer/client in [an] ongoing commercial relationship, which included interest, was "collectible." In ***Parker***, the Court looked at the length of the relationship (similar to that of Bodman and [Appellants],) the fact that the statements contained a provision for finance[] charges on any bill over 30 days due, and set forth the monthly and annual amount. The [trial c]ourt found that this could be included by the [] court in the assessment of damages due, that there was clearly no error in accepting evidence of the finance charge[s] and, lastly, that such language on the invoice was not the type of term that would materially alter an agreement and thus void the contract. [***Id.*** at] 857-58 ([c]iting ***Herzog Oil Field Serv. Inc. v. Otto Torpedo Co.***, … 570 A.2d 549, 551 (Pa. Super. 1990)).

The parallels to this case are obvious. Bodman and [Appellants] had a professional relationship that started before this case. [Appellants] again engaged Bodman's services and were sent monthly invoices that clearly stated an interest charge on overdue or late payments. **[Appellants] received these invoices, did not contest the interest charge, and, in fact, paid these charges until well into the matter.** [Appellants] decided to challenge the amount owed after Bodman filed an action to recover the unpaid balance. The inclusion of these terms did not materially alter the contract between Bodman and [Appellants], and the amount charged is legally permissible ….

- 15 -

Trial Court Opinion, 6/25/24, at 11-12 (punctuation modified; emphasis added).  We agree with the trial court's sound reasoning.

The late payment fees/interest amount to be paid by Appellants was readily ascertainable from reviewing past invoices and applying the compounded interest rate for late payments.  It is also undisputed that Appellants acknowledged prior late fees and indicated their willingness to pay the same.  Under these circumstances, the trial court had no discretion—the court was required to award contractual interest to Bodman, in the amount specified by the invoices.  *See TruServ Corp.*, 39 A.3d at 261 ("[W]here the language of a contract is clear and unambiguous, a trial court is required to give effect to that language." (citation omitted)).  Accordingly, Appellants' challenge to the trial court's calculation and award of contractual interest merits no relief.  For the foregoing reasons, we affirm the trial court's judgments, which included the award of contractual interest.

Judgments affirmed.


Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 05/13/2025